THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Respondent, *v.* THE THIRD AVENUE RAILROAD COMPANY, Appellant.

Prior to December 18, 1852, stages drawn by two horses were run on Third avenue in the city of New York, each of which paid to the city an annual license fee of $20 under an ordinance entitled "of coaches and accommodation coaches," passed May 8, 1839, and amended in 1854, which required the payment of a license fee to the city "for its use," for every accommodation "coach or stage or stage coach" of $20 when drawn by two horses. On December 18, 1852, plaintiff's common council, by resolution, conferred upon defendant's assignors a right, to construct, run and operate a street railroad on said avenue; and, in consideration thereof and of other matters, declared that they should "pay from the date of opening the said railroad the annual license fee for each car now allowed by law, and shall have licenses accordingly." An agreement was entered into between the city and said assignor in conformity with the resolution; the road was constructed and defendant has run over it a large number of passenger cars, each drawn by two horses. In an action based upon said resolution and contract, *held*, that the city was entitled to recover an annual license fee of $20 for each car; that by adaptation and improvement the modern railway car has been

evolved from the old-fashioned stage coach, and in definition a " car " or " coach " or " stage " or a " stage coach " is the same, each implying a vehicle or conveyance running on wheels; and that the fee mentioned in the ordinance was the one intended by both parties.

(Argued November 1, 1889; decided November 26, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 18, 1888, which affirmed a judgment in favor of plaintiff, entered upon a verdict directed by the court, and affirmed an order denying a motion for a new trial.

This action was commenced November 8, 1875, to recover of defendant an annual license fee of $20 for each car run by it during the years 1860 to 1874, inclusive.

The action is based upon a resolution of plaintiff's common council and an agreement based thereon. The resolution passed December 18, 1852, authorized Myndert Van Schaick and others, defendant's assignors, to construct a street railroad in Third avenue in the city of New York and to run cars thereon. The resolution was embodied in a written agreement between the parties. The material part of the resolution and agreement is as follows :

" 3. *Resolved,* That in consideration of the good and faithful performance of the conditions, stipulations and agreements above prescribed, and of such other necessary requirements as may hereafter be made by the common council for the regulation of said railroad, the said parties shall pay, from the date of opening the said railroad, the annual license fee for each car now allowed by law, and shall have licenses accordingly."

It was shown that at the time of the passage of the resolution and of the agreement there was in existence no ordinance of the city of New York imposing upon the defendant the duty to pay $20 a car for each car used upon its lines, except an ordinance passed May 8, 1839, treating " of stages or accommodation coaches." The section relied upon is as follows :

" 5. Every person licensed by virtue of the provisions of this title shall pay to the mayor of the city of New York, for

the use of the city, for every accommodation coach or stage or stage coach which such person shall keep, the sum of $20, when drawn by two horses."

The trial court held said ordinance applicable to the agreement of 1853 and directed a verdict for the amount claimed.

Further material facts appear in the opinion.

*John E. Parsons* and *James E. Lowry* for appellants. Neither the plaintiffs nor the defendant have any rights in respect of the running of cars upon the defendant's railroad, excepting as those rights have been explicitly conferred by or are derived from the legislature. (*Davis* v. *Mayor, etc.*, 14 N. Y. 506; *People* v. *Kerr*, 27 id. 108; *Milhau* v. *Sharp*, Id. 611.) Excepting as explicitly authorized by the legislature an exaction by the plaintiffs of license fees, payable to themselves for acts authorized by the legislature, cannot be justified as a proper exercise of the plaintiffs' police or revenue raising powers. (*Mayor, etc.*, v. *S. A. R. R. Co.*, 32 N. Y. 273.) The act of April 4, 1854, is the sole source of whatever rights either the plaintiffs or the defendants have in respect of the cars that were run upon the defendant's railroad throughout the period covered by this action. (Laws of 1854, § 3.) The act of April 4, 1854, was avowedly legislation adverse to the plaintiffs and remedial towards the defendant. So far as the plaintiffs are concerned the utmost the act did was to confirm their previously void resolutions and agreements and give them such rights, but only such rights as they had themselves thereby stipulated for. (Laws of 1854, §§ 1, 2, 3.) The only public grant of privileges under which the defendant has operated its road has been the act of April 4, 1854. (*Mayor, etc.*, v. *S. A. R. R. Co.*, 32 N. Y. 272; *Milhau* v. *Sharp*, 27 id. 611.) The rule of construction applied to the plaintiff's resolutions and agreement by the courts below is erroneous. (*Mayor, etc.*, v. *S. A. R. R. Co.*, 32 N. Y. 220.) The stage coach license fee sought to be recovered in this action meets none of the requirements of the plaintiffs' own stipulations and contract. (*Isaacs* v. *T. A. R. R. Co.*, 47

N. Y. 122 ; 2 R. S. 982–983, chap. 20.)   It was never intended
that the license fee provided for in the plaintiffs' resolutions
should be the stage coach license fee.   (*Mayor, etc.,* v. *T. A.
R. R. Co.,* 33 N. Y. 42 ; *T. A. R. R. Co.* v. *Mayor, etc.,* 54
id. 157 ; *Mayor, etc.,* v. *Starin,* 106 id. 21 ; *S. A. R. R. Co.
Case,* 32 id. 273.)   The court has no power to so reconstruct
or to vary in plaintiffs' favor their own stipulations.   (*Jack-
son* v. *Lewis,* 17 Johns. 475 ; *W. & W. T.* v. *People,* 9 Barb.
161 ; *People* v. *N. Y. C. R. R. Co.,* 13 N. Y. 78 ; *McCloskey*
v. *Cromwell,* 11 id. 598 ; *Benton* v. *Wickwire,* 54 id. 226 ;
*Green* v. *Wood,* 7 Ad. & El. 179 ; *People* v. *Woodruff,* 32
N. Y. 364.)   Even if the plaintiffs' stage coach ordinance be
held applicable to the defendant the plaintiffs cannot maintain
this action.   (2 R. S. 481, § 7 ; 67 Barb. 385.)

*D. J. Dean* for respondent.   By the conditions of the
franchise granted to Van Schaick and his associates, the
defendants became chargeable with a license fee of $20
for each two-horse car.   (*Hoyt* v. *S. A. R. R. Co.,* 1 Daly,
528, 530 ; *F. and P. P. R. R. Co.* v. *City of Philadelphia,*
58 Pa. St. 119 ; *People* v. *Lacombe,* 99 N. Y. 49 ; *People ex
rel. T. T. S. R. R. Co.* v. *Comrs.,* 95 id. 558 ; *H. R. I. Co.* v.
*Alger,* 54 id. 173.)   If, by the terms of the grant of the
franchise, doubt or uncertainty exists as to the intent to
impose a license fee, or the amount of the fee, that doubt or
uncertainty is to be determined in favor of the plaintiff.
*Mayor, etc.* v. *E. A. R. R. Co.,* 43 Hun, 618 ; *Langdon*
v. *Mayor, etc.,* 93 N. Y. 129 ; *Dermott* v. *State,* 99 id.
107 ; *Mayor, etc.* v. *B. & S. A. R. R. Co.,* 97 id. 281 ; *Mayor,
etc.* v. *D. D., etc., R. R. Co.,* 112 id. 137 ; *Mayor, etc.* v.
*T. T. S. R. R. Co.,* 113 id. 311 ; *C. T. Co.* v. *Ryder,* 1 Johns.
Ch. 611 ; *N. T. Co. Miller,* 5 id. 101 ; 11 Peters, 420 ; *O. F.
Co.* v. *Fish,* 1 Barb. Ch. 547 ; *Thompson* v. *N. Y. & H. R.
R. R. Co.,* 3 Sandf. Ch. 625 ; *M. B. Co.* v. *U. & S. R. R.
Co.,* 6 Paige, 554 ; *C. B. Co.* v. *Magee,* 6 Wend. 85 ; *A. &
C. P. R. R. Co.* v. *Douglass,* 9 N. Y. 444 ; *Fertilizing Co.*
v. *Hyde Park,* 97 U. S. 659 ; *Newton* v. *Comrs.,* 100 id. 561 ;

*Rice* v. *M. & N. R. R. Co.*, 1 Black, 358 ; *Comm.* v. *Roxbury*, 9 Gray, 451, 492 ; *Bradley* v. *N. Y. & N. H. R. R. Co.*, 21 Conn. 294 ; *H. B.* v. *U. F. Co.*, 29 id. 210 ; *Dugan* v. *Bridge Co.*, 27 Penn. 303 ; *Comm.* v. *E. & N. R. R. Co.*, 27 Pa. St. 339 ; *Allegheny* v. *O. & P. R. R. Co.*, 26 id. 355 ; *Commonwealth* v. *C. P. R. R. Co.*, 52 id. 516 ; *S. C. Co.* v. *Wright*, 9 W. & S. 9 ; *B. Co.* v. *H. Co.*, 13 N. J. Eq. 81 ; *Townsend* v. *Brown*, 24 N. J. Law, 80, 87 ; *N. Co.* v. *Elmer*, 9 N. J. Eq. 754, 789 ; *Currier* v. *M. & C. R. R. Co.*, 10 Ohio St. 228, 231 ; *M. C. Co.* v. *Wharton*, 19 id. 560 ; *R. & G. R. R. Co.* v. *Reid*, 64 N. C. 158 ; *Wilcoxon* v. *McGhee*, 12 Ill. 381 ; *St. L., V. & T. H. R. R. Co.* v. *Haller*, 82 id. 208, 212 ; *S. V. W. Works* v. *San Francisco*, 52 Cal. 111, 121 ; *Bartram* v. *C. T. Co.*, 25 id. 283, 288 ; *M. S. Bk.* v. *Dunkin*, 54 Ala. 471 ; *F. R. R. Co.* v. *P. R. Co.*, 10 Fla. 145 ; *McLeod* v. *Burroughs*, 9 Ga. 213, 221 ; *Gaines* v. *Coates*, 51 Miss. 335, 342 ; *M. & G. Gas Co.* v. *Williamson*, 9 Heisk. 314, 326 ; *B. G. R. R. Co.* v. *Warren Co.*, 10 Bush. 711 ; *Greene's Estate*, 4 Md. Ch. 349, 355 ; *Miners' Bk.* v. *U. S.*, 1 Greene, 553, 562 ; *St. P. & C. R. R. Co.* v. *Brown*, 24 Minn. 517, 583 ; *S. C. Co.* v. *Wheeley*, 2 B. & Ad. 792 ; *Gildart* v. *Gladstone*, 11 East, 685 ; *K. D. Co.* v. *La Marche*, 8 B. & C. 42 ; *Leeds* v. *L. Canal*, 1 id. 424 ; *Priestly* v. *Foulds*, 2 Scott's New R. 205 ; *P. B. Co.* v. *Nance*, 6 id. 823 ; *Barrett* v. *Stockton, etc., R. Co.*, 3 id. 803 ; *Blakemore* v. *G. C. Co.*, 1 Mylne & K. 154 ; *Scales* v. *Pickering*, 4 Bing. 448.)

DANFORTH, J. The inquiry is as to the construction of certain resolutions passed by the plaintiff's common council, December 18, 1852, accepted by Van Schaick and others, the defendant's assignors, and which formed the basis of an agreement between the mayor, aldermen and commonalty of the city of New York of one part, and Van Schaick and his associates of the second part. Those resolutions conferred a right to construct, run and operate the defendant's railroad (*People ex rel. Third Ave. Railroad Co.* v. *Newton*, 112 N. Y. 396), and the present action is brought to enforce pay-

ment of the consideration to which, by their terms, the plaint-iff claims to be entitled. The obligation of the grantee is expressed in the resolutions. It follows the grant of power to the plaintiff's assignors, and in consideration thereof, and of other matters, it declares that they, "the said parties, shall pay from the date of opening the said railroad, the annual license fee for each car now" (December 1852) "allowed by law, and shall have licenses accordingly."

At that time an ordinance, entitled "Of stages and accom-modation coaches," passed May 8, 1839, and amended in 1844, was in force and required the payment of a license fee to the city of New York, "for its use," for every accommodation "coach or stage or stage coach" any person "shall keep the sum of $30 when drawn by four horses, and $20 when drawn by two horses." The defendant, by virtue of the power and privileges conferred by the resolutions, has every year run over its road a large number of passenger cars, each drawn by two horses, and under the ordinance above set out, the plaintiff has recovered a verdict for license fees of $20 each, according to the number of cars run within the last six years.

The courts below have given judgment upon the verdict, holding that the application of the ordinance was as contended by the plaintiff, and that the resolutions according to the ordinary and natural interpretation of their words, subjected the defendant to the payment of the tax imposed by it. We are of the same opinion.

The general meaning or governing sense of the resolutions which recite the defendant's obligation is obvious enough. It is that, in consideration of the franchise it bargains for, it shall pay a license fee ; it is to pay such fee from the opening of the road annually, and it is to pay, not a fee thereafter to be imposed, but a fee already imposed and then existing in favor of the city. The ordinance then actually in force con-tains everything necessary to answer those conditions, but the contention of the defendant is that it enumerates as its subjects "a stage," "an accommodation coach," "a stage coach," and

is altogether silent as to "railroad car," or even "car." We are unable to see the force of the observation. In definition a "car," or "coach," or "stage," or a "stage coach," is the same. They are vehicles that turn, or that run by turning on wheels. Place boards over or between wheels and we have a platform car adapted to freight; place benches or chairs upon the platform and we still have a car, but adapted to passengers, and then easily termed a carriage. Instead of benches or chairs put on the platform the body of a "stage coach" and we have such a "railroad car" as served at the inauguration of the earliest railroad in our state. It is plain that by adaptation and improvement "the modern railway car has been evolved from the old-fashioned stage coach." (The American Railway, 231.)

In common language, a railroad carriage designed for passengers is called indifferently a "coach" or "car." In every collection of words arranged according to the ideas which they express, these, and others with them, will be found classed together as having the same signification. Neither the word "coach," "stage" or "car" can be said to be words of art, or to have any legal or fixed meaning distinguishing one from the other, or any one of them from several other terms implying a vehicle or conveyance. We are, therefore, to look at the context of the resolution and the circumstances under which it was adopted, and especially at the matter which the parties had in contemplation:

*First.* There was a grant by one party of a valuable franchise or privilege in conveying passengers along one of the avenues of the city.

*Second.* Over that avenue there were at that time three stage lines, accommodating a large travel, and these paying for each stage or coach a license fee of $20 to the city of New York. In the nature of things the new mode of transportation would succeed the old. Its purpose was the same. The railroad would drive off the stages, or, if travel sufficed, the new vehicle and the old would, at least, run in competition. If driven off the license fees would be lost to the city, and, if both

survived, there was no reason why one company should be favored and the other not, or the city be denied its revenue from either. In fact, with the competition of the defendant's road, the stage lines were completely superseded.

*Third.* The receipt of revenue as part of the consideration of the granting of the new franchise was the object aimed at by the city, and its payment was part of the price agreed upon by the other party ; both, then, had a license fee in contemplation, and it is conceded that there was no other than that prescribed by the ordinance (*supra*) on which the plaintiff now relies. We think the fee mentioned in the ordinance was within the intention of both parties as expressed in the agreement, and concur with the court below in the conclusion that its payment may properly be enforced.

The judgment appealed from should, therefore, be affirmed. All concur.

Judgment affirmed.