CASE 24—PETITION EQUITY—APRIL 14.

# Covington & Cincinnati Bridge Co. v. South Covington & Cincinnati Street Railway Company.

### APPEAL FROM KENTON CHANCERY COURT.

1. DUTY OF BRIDGE COMPANY AS TO STREET CARS.—Where a bridge company owning a bridge connecting two cities has laid down rails on its bridge for the passage of street cars, it has assumed a public duty with reference to street car companies that requires it to permit street cars to pass over its bridge at reasonable rates of toll, and it can not at its pleasure destroy this means of travel by removing its rails or refusing to permit such cars to go upon its bridge.

2. A BRIDGE COMPANY IS NOT A COMMON CARRIER, and therefore the question as to the right of one carrier to refuse to transport the business of another is not involved in this controversy between a bridge company and a street car company as to the tolls which the former may charge for the passage of street cars over its bridge.

3. BRIDGE COMPANY MAY CHARGE REASONABLE TOLL FOR STREET CARS—A provision in the charter of a bridge company fixing the tolls it may charge for two-horse vehicles does not apply to street cars drawn by two horses; and, there being no provision in the charter fixing the tolls which may be charged for street cars, the bridge company may charge such tolls as it pleases, provided its charges are not unreasonable, and there is no discrimination as between different street car companies. A charge by the bridge company of two cents for each passenger in a street car passing over the bridge is not unreasonable.

RAMSEY, MAXWELL & RAMSEY FOR APPELLANT.

1. The franchise of the Bridge Company to conduct the business which it was authorized by its charter to do, was exclusive.

2. The use of a public highway by a street railway can only be made by legislative grant, supplemented by the consent of the local authority controlling such highway; and a highway belonging to a private corporation, can only be so used by its consent.

3. This court has decided that the use of a highway by a street railroad is not the same, or similar to that made by the general public, and this holding is sustained by all of the authorities upon the subject, and is conclusive upon the entire controversy between the parties.

4. The appellee has no corporate power to cross appellant's bridge, but is

Covington & Cincinnati Bridge Co. v. South Cov. & Cin. Street R'y Co.

limited by its charter to a line over the Newport bridge, the southern terminus of which is in a city other than Covington, and a county other than Kenton.

5. Waiving all other questions, it does not appear that the appellant is bound to accept twenty cents per car, or any smaller sum, and for that reason, the judgment should be reversed.

Cases cited: Louisville City R. Co. v. City of Louisville, 8 Bush 420; Covington Street Ry. Co. v. Covington, 9 Bush, 129: 87 Ky., 236; Metropolitan Ry. Co. v. Quincy R. Co., 12 Allen, 262; Metropolitan Ry. Co. v. Highland Ry. Co., 118 Mass., 290; Coach Co. v. Railroad Co., 33 N. J. Eq., 267; Kenton Co. v. Turnpike Company, 10 Bush, 529; Springfield v. Conn. River R. Co., 4 Cushing, 63; Louisville & Portland Ry. v. Louisville City R. Co., 2 Duv., 178; Johnson v. Louisville Ry. Co., 10 Bush, 238; Bridge Proprietors v. Hoboken Co., 1 Wall. 176; s. c. 2 Beas., N. J. Ch., 81; Lake v. Railroad Co., 7 Nevada, 294; Tucker v. Railroad Co., 21 N. H., 29; McKee v. Railroad Co., 2 Jones (N. C.), 186; Mohawk Bridge Co. v. Railroad Co., 6 Paige, Ch. 555; Craig v. Rochester Co., 39 N. Y., 404; The Express Cases, 117 U. S., 1; Mayor of New York v. Third Avenue R. Co., 22 N. E. Rep., 755; In re South Beach Co., 5 N. Y. S., 172; s. c., 53 Hun., 131; Stamford v. Stamford, 15 Atl., 749; K.& I. Bridge Co. v. L. & N. R. Co., 37 Fed Rep., 615.

FISK & FISK on same side.     Brief not in record.

SIMRALL & MACK, WM. GOEBEL for appellee.

1. In the use of a public highway there can be no discrimination between persons using the highway under similar circumstances. (Scofield v. Lake Shore & Michigan Southern Ry. Co., 43 Ohio State, 571; Sandford v. Railroad Co., 24 Pa. St., 378; Shipper v. Penn. R. Co., 47 Pa. St., 338; Audenreid v. Phil. & Read. R. Co., 68 Pa. St., 370; New England Express Co. v. Maine Cent. R. Co., 57 Me., 188; McDuffee v. Portland & Roch. R. Co., 52 N. H., 430; Dinsmore v. L. C. & L. R. Co., 2 Fed. Rep., 465; Vincent v. C. & A. R. Co., 49 Ill., 33; C. & N. W. R. Co. v. People, 56 Ill., 365; Messenger v. Penn. R. Co., 36 N. J. Law, 409.)

2. Appellant's charter must be strictly construed in favor of the public. (Sedgwick on Construction of Statutory and Constitutional Law, 2d ed., p. 292; Charles River Bridge Co. v. Proprietors of Warren Bridge, 11 Peters, 420; Maddox v. Graham, 2 Met., 56; Louisville & Portland R. Co. v. Louisville City R. Co., 2 Duv., 175; B. G. & M. R. Co. v. Warren County, 10 Bush, 712; Caldwell v. Rupert, 10 Bush, 179; Tyler v. E. & P. R. Co., 9 Bush, 516 : Kniper v. City of Louisville, 7 Bush, 599; Angell on Highways, sec. 357; Turnpike Co. v. Freeman, 14 Conn. 85; Harrison v. James, 2 Chitty, 547; Hearsey v. Pruyn, 7 Johns,

179; Chestney v. Coon., 8 Johns., 150; Short v. Hudson, 5 H. and N., 559; Norris v. Poate, 3 Bing., 41; s. c. 10 Moore, 293; Waterhouse v. Keen, 4. B. and C., 200; s. c. 6 D. and R., 257; Chambers v· Williams, 7 D. and R., 842; Williams v. Sanger, 10 East., 66; Wooster v. Van Vechten, 10 Johns., 467; Androscoggin Bridge v. Bragg, 16 N. H., 502.)

Under this rule of construction the word " carriage " as used in appellant's charter must be regarded as including a street car. (Angell on Highways, sec. 40; Lewis on Eminent Domain, sec. 168; Arnold v. Covington and Cincinnati Bridge Co., 1 Duv., 372; Proctor v. Crozier & Marshal, 6 B. M., 268; Buncombe Turnpike Co. v. Newland, 4 Dev. (1 N. C.), 463; Talcott Mountain Turnpike v. Marshal, et al, 11 Conn., 185; Phila. L. Turnpike Co. v. Gartland, 6 Phila. Rep., 128; Taylor v. Goodwin, L. R. 4 Q. B. Div. 228; State v. Collins, 3 L. R., Annotated, 394; Mercer v. Corbin, 20 N. E. Rep., 132; 29 Cent. Law Journal, 412, note; Mayor of New York v. Third Avenue R. Co., 40 Am. and Eng. Ry. Cases, 278; Gen. Stats., chap. 29, art. 14; Myers Supplement, Act of Feb. 4, 1865, p. 160; The Camden & Amboy R. & T. Co. v. Burke, 13 Wend., 611; Phila. & Trenton R. Co. v. Stimpson, 14 Pet., 448; Stimpson v. Westchester R. Co., 4 How., 380; Stimpson v. Baltimore, &c., R. Co., 10 How., 329; Allerton v. City of Chicago, 9 Biss., 552; Frankfort & Philadelphia Passenger Ry Co. v. City of Philadelphia, 58 Pa. St., 119; Covington St. Ry. Co. v. Covington & Cincinnati St. Ry. Co., 19 Am. Law Reg., N. S., p. 765; Webster's Dictionary, word " carriage ".)

3. If a street car is not a carriage appellant has no right to charge any toll whatsoever upon it. (Moss v. Moon, 18 Johns., 129.)

4. Appellant has no right to charge toll upon occupants of vehicle. (Portsmouth Bridge Co. v. Nance, 6 Manning and Granger, 227; Perrine v. Chesapeake & Delaware Canal Co., 9 How., 172; Kelly v. Altemus, 34 Ark , 184.)

·5. Appellant having so constructed its bridge as to meet all the demands of public travel, it can not, after such use has been established, change its bridge so as to inconvenience the public, or so as to destroy large investments of capital induced by the manner of its construction. (Lewis on Eminent Domain, sec. 120 and cases cited.)

The case of K. & I. Bridge Co. v. L. & N. R. Co., 37 Fed. Rep. 615, distinguished from this.

6. The point made by counsel for appellant that appellee has no corporate power to run its cars into Ohio over appellant's bridge, or otherwise, is not well taken.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

This is a controversy between the Covington and Cincinnati Bridge Company on the one side, and the South

Covington and Cincinnati Street Railway Company on the other, and involves the question of toll collected, or attempted to be collected, by the bridge company of the street railway company.  The latter maintains that, in the fixing of tolls, there is an unjust discrimination in the charge upon its vehicles and the charge made against other vehicles of a like character ; that by the rates of toll fixed by the bridge company for years, twenty cents was the established rate for a vehicle drawn by two horses, and that as the car or coach of the street railway company is drawn by two horses, the bridge company has no right to charge more for such a car than the ordinary carriage or farm-wagon drawn by two horses; and so the chancellor below adjudged.  The bridge company claims it has the right to charge a greater sum, and insists that it may exclude the street railway company from the use of its bridge by its cars altogether, if it should deem it proper to do so.

The real issue is as to the amount of toll to be charged; for, if the appellant (the bridge company), by reason of its duty to the public and to this appellee, is compelled to permit street cars to pass over its bridge, it then becomes a question solely as to the reasonableness of the toll, and whether a discrimination is made in fixing the toll as against the appellee, the street car company.

The bridge company obtained its act of incorporation in February, of the year 1846, with the power given its president and directors " to fix the rates of toll for passing over the bridge, and to collect the same from all and every person or persons passing thereon, with their goods, carriages or animals of every description or kind.  Toll gates shall be kept and tolls received at each end of the

bridge, and the rates of toll shall be posted up in some conspicuous place where the toll is demanded." The bridge was opened to the public on the 1st of January, 1867; rates of toll were fixed by the president and directors, and that of a vehicle drawn by two horses at twenty cents.

When the act of incorporation was obtained, and at the time the bridge was built, there were no street railways in the city of Covington; but the bridge company, seeing the necessity for a more convenient and rapid transit from the one city to the other than by the ferry boat, and anticipating the existence of street railways in Covington, so constructed its bridge by laying down iron rails upon it as that street cars might pass over it, and in doing so increased, necessarily, its cost and added to the expense in keeping it in repair. It constructed approaches to its bridge for cars on each side of the river and invited companies subsequently organized to use its bridge, charging the first car company as much as two and one-half cents for each passenger crossing in the street cars, and finally reducing it to two cents.

The appellee was chartered in January, 1876, and from that time on has been operating its cars between the two cities, paying what was charged other street car companies. There was no contract between the bridge company and the appellee, and the latter paid as if it was a part of the corporate duty of the bridge company to allow the use of its bridge to street cars upon paying a reasonable toll. While it is evident the street car company could not have compelled the bridge company to place rails on the bridge and construct it so as cars might pass over it, as from its charter it was a bridge to be con-

structed for the ordinary purposes of travel, still, when the appellant has seen proper to enlarge its franchise in so far as the public is concerned, and to make it a street railway bridge as well as one for ordinary travel, it has assumed a corporate duty, or if not corporate, a public duty, with reference to street car companies, that requires it to permit street cars to pass over its bridge at reasonable rates of toll, and can not, at its pleasure, destroy this means of travel by removing its rails or refusing to permit such cars to go upon its bridge. This bridge is a highway, and dedicated by the company not only to the uses of ordinary travel but to its use by street railway companies in passing cars over it from the one city to the other. This company has permitted this use of its bridge for more than a quarter of a century; has induced from time to time large expenditures of money in building street railways, and inviting the travel upon its structure by all such corporations. It is the only way of reaching the city of Cincinnati by the use of street cars, and to stop this public travel would not only destroy much of this capital invested in such enterprises, but would be disastrous to the public interests.

In our opinion, the appellee has the right to pass over this bridge by paying a fair rate of toll. The bridge is not a common carrier, and, therefore, the question as to the right of requiring one carrier to transport the business of another carrier has no application.

Neither the Express Cases in 117 U. S., 1, nor the case of Kentucky & Indiana Bridge Co. v. L. & N. R. Co., 37 Fed. Rep., 567, can in any wise affect the decision in this case.

The appellant being under a legal obligation to the appellee as to this right of user, the question then is:

Has the appellant, in making its charges, discriminated against the appellee by charging other cars or vehicles of like character a less rate? If so, the judgment below should have provided a remedy for the wrong. There is certainly a manifest difference between a street car and two-horse vehicles as ordinarily used by the traveling public. The ordinary vehicles may go upon the street without a license from the city or the State. The one has a franchise that is in one sense exclusive; the other moves as a legal right, subject to pay for the use of the property of others constructed for the public use by paying such toll as the sovereign has authorized, or the one dedicating his property to public use demands, if reasonable; in other words, the use of a highway by the general public is no argument in favor of a like use by a street car company.

In regulating tolls, no one would classify a street car with a family carriage, or a two-horse wagon. A street car could be so constructed as to carry one hundred passengers drawn by two horses, and will ordinarily carry eight or ten times as many persons as a two-horse carriage; and, therefore, the injustice of permitting such a travel over appellant's bridge with no greater charge than is imposed on an ordinary two-horse vehicle. It is said, however, that if a street car is not classed as a two-horse vehicle, there is then no provision of the charter authorizing any toll to be paid. The only answer to such a result would be, that if no charge can be made the right to the use of this bridge must be denied.

The appellant had been charging two cents for each passenger within the cars for many years, and up to the 2d day of April, 1889, when the Board of Directors fixed the rate at twenty cents for each car in lieu of two cents for each passenger. The great number of cars passing every twenty-four hours made this charge of twenty cents equal, or nearly so, to the two-cent toll. In a short time, however, the number of cars diminished. The street car company would land its passengers at each end of the bridge so that the car in crossing would have full loads, thus placing the passengers in a less number of cars and lessening appellant's toll, and for that reason, on the 1st of May, the old charge of two cents was resumed. The number of cars crossing the bridge prior to 2d of April, from the statement of the appellee, was four hundred and thirty-six per day, and by the change made the number was reduced to three hundred and forty-four. By lessening the number of cars and increasing their capacity for carrying, the number could be lessened to such an extent as to deprive the appellant of sufficient toll to keep that part of the bridge in repair.

If, as adjudged below, a street car is to be treated as an ordinary two-horse vehicle, the discrimination complained of should be prohibited; but when a part of this bridge is dedicated to the sole use of such cars and its mode and construction indispensable to that use, and at the same time creating an additional expenditure by the appellant, made necessary by such use, we see no reason for holding, when regulating the toll, that no difference exists between street cars and the ordinary vehicle drawn

by two horses and used for every day travel.   Cases have been cited by counsel where a street car has been held to come within the meaning of the word *coach*, or the words *accommodation coach*, when imposing a license upon vehicles by an ordinance of a city council, and we would be inclined to say that, if all vehicles drawn by two horses were made the subject of municipal taxation, and there was no tax imposed on street cars as such, that the act was intended to embrace them, and, therefore, they must pay the tax.   As in the case of the Mayor of New York v. Third Avenue R. Co., 117 N. Y., 404, where the ordinance imposing a license used this language: "A stage," "an accommodation coach," "a stage-coach," but was silent as to a street car, the court held that cars were vehicles run on wheels, and one could not be distinguished from the other, and for that reason the license must be paid.   The court in that case, when applying the facts to the subject matter of the issue, could see no reason for exempting a street car and imposing a license on all other vehicles; and the facts of the particular case often control the determination of such questions.

The law-making power might authorize a turnpike company to charge a fixed sum as toll for a two-horse vehicle, but no one would suppose that it was intended by such legislation to authorize a street car company to go upon the turnpike and use it, or any part of it, for street car purposes.   There seems to us to be but little, if any, analogy between the cases cited and the case before us, and in determining the rights of these parties, it would be unjust to hold that the appellee, in the exercise of its franchise, could use the appellant's bridge and

transport as many passengers over it as could be crowded into one car, and pay only such toll as is required of an ordinary two-horse vehicle. It would be placing the use of the appellant's bridge at the disposal of another corporation, with no remedy as long as the passage over it in these cars is operated by two-horse power.

We find no discrimination as against the appellee in favor of other like companies; they are all charged with the same burden. Nor do we perceive that the charge of two cents is unreasonable; and, in fact, with the usual number of cars running over appellant's bridge, there is no great difference between the charge of twenty cents for each car and that of two cents for each passenger; but whether so or not, there is no discrimination shown to exist, and that is the question involved on this appeal. There is testimony showing that after the change in the toll, tickets were sold at the rate of twenty cents per car to the appellee; if so, these tickets the appellant should be compelled to accept until they are exhausted, and then the rate should be two cents, as fixed by the Board.

Judgment reversed, and remanded for proceedings consistent with this opinion.