(Supreme Court, Trial Term, New York County. February, 1904.)

1. STREET RAILROADS—LICENSE FEE—AGREEMENT.

By an agreement on January 1, 1853, the Third Avenue Street Railway Company contracted with the city of New York for permission to lay a double track in certain streets. The power to use steam was forbidden, and the privilege was granted on the payment "of the annual license fee for each car now allowed by law." *Held*, that the amount of the license fee was thereby established, and such amount was not affected by the voluntary change by the railroad company of its motor power to a cable system, and from a cable system to electricity.

2. SAME—AMOUNT.

Where an agreement between the city of New York and a street railway company, January 1, 1853, granted the use of the streets for "the annual license fee for each car now allowed by law," the amount thereof was established by Ord. May 8, 1839, § 5, relating to stages or accommodation coaches, at $20.

3. LIMITATIONS—CONTRACT UNDER SEAL.

A contract under seal is not governed by the six-years statute of limitations.

Action by the city of New York against the Third Avenue Railroad Company. Judgment for plaintiff.

George L. Rives, Corp. Counsel (Chase Mellen, of counsel), for plaintiff.

Henry A. Robinson (Eugene Treadwell, of counsel), for defendant.

¶ 3. See Limitation of Actions, vol. 33, Cent. Dig. § 100.

GREENBAUM, J.   This action is brought to recover the sum of $25,720, with interest, claimed to be due for car license fees from defendant for the years 1894 to 1899 inclusive.   The conceded facts are that the plaintiff is a municipal corporation which succeeded to all the rights, obligations, and liabilities of the mayor, aldermen, and commonalty of the city of New York; that the defendant is a street surface railroad corporation organized and existing pursuant to the provisions of the general railroad act of the Laws of 1850 (Laws 1850, p. 211, c. 140), and the acts amendatory thereof; that the defendant was organized pursuant to the terms of a grant or agreement dated January 1, 1853, between the mayor, aldermen, and commonalty of the city of New York, and the persons incorporating the defendant; that the grant or agreement contains, among others, the following provisions: (a) "Permission is hereby granted to lay a double track for a railroad" in certain streets specifically named; (b) that "no steam power be used on any part of the road for propelling cars"; (c) "Resolved, that in consideration of the good and faithful performance of the conditions, stipulations and agreement above prescribed, and of such other necessary requirements as may hereafter be made by the common council, for the regulations of the said railroad, the said parties [meaning the incorporators of said defendant, the Third Avenue Railroad Company] shall pay, from the date of opening the said railroad, the annual license fee for each car now allowed by law, and shall have licenses accordingly;" that prior to the year 1894 the defendant paid to the city the sum of $20 per passenger car per annum for the cars run and operated by it; that until in or about the year 1894 the motive power employed upon the railroad of the defendant was horse power, each car being drawn by two horses; that thereafter, "in order to furnish increased facilities for public travel, both in convenience and speed, and under and pursuant to the authority of the laws of the state of New York, more particularly chapter 531 [page 729] of the Laws of 1889," the motive power of said railroad was changed to an underground cable system, constructed and laid between new tracks that had been substituted in place of the former tracks, the use of horses to draw said cars being wholly dispensed with; that "thereafter and until in or about the year 1899 the said railroad continued to be so constructed and so operated as an underground cable railroad"; that "thereafter, for the purpose of furnishing further increased facilities and safety for public travel, and under and by virtue of the Laws of the state of New York in such case made and provided, the said underground cable railroad was changed to a railroad operated by electricity as a motive power, consisting of a cable or wire constructed or placed in an underground conduit between the tracks of said railroad, and supplied with electricity or power created and furnished by electrical appliances located in power houses or buildings specially erected and constructed therefor"; that the changes so made in the motive power for operating said cars necessitated an outlay on the part of defendant of many millions of dollars.

Two defenses are interposed to plaintiff's claim:   First, that the license fee imposed upon the defendant under the original agreement or grant "was applicable, and intended to be applicable, only

to a horse railroad, where the cars were drawn by horses, and was no longer applicable when the road was changed from a horse railroad to an underground cable, and subsequently to an electrical road"; second, that, as to the license fees claimed for 1894, the statute of limitations bars any recovery.

The only ordinance in force January 1, 1853, when the defendant received its grant from the plaintiff's predecessor, which prescribed the payment of a license fee for passenger vehicles, was an ordinance passed May 8, 1839, entitled "Of Stages or Accommodation Coaches," section 5 thereof reading as follows:

"Every person licensed by virtue of the provisions of this title shall pay to the mayor of the city of New York, for the use of the city, for every accommodation coach or stage, or stage coach which such person shall keep, the sum of $30 when drawn by four horses and $20 when drawn by two horses, and half those prices respectively when the tire of any accommodation coach or carriages licensed by this act shall be of the width of four inches or upwards."

The grant or agreement under which defendant operates its railroad has, so far as the question of license fees is concerned, twice been the subject of judicial consideration and construction. In the first case (Mayor v. Third Ave. R. R. Co., 33 N. Y. 42) an action was brought against the defendant to recover penalties incurred for running cars without payment of license fee of $50, as required by a city ordinance passed December 31, 1858. In that case the Court of Appeals, following the decision in Mayor v. Second Ave. R. R. Co., 32 N. Y. 261, held that:

"The increase of the sum payable as a license fee under the ordinance of 1858, beyond the amount provided for by the stipulations in the contract of 1853, * * * was simply an attempt by one of the parties to a contract to revoke a provision inserted for the benefit of the other, and that penalties could not, therefore, be recovered."

The second case arose upon the claim of plaintiff to recover of defendant annual license fees of $20 for each car run by it during the years 1860 to 1874, inclusive; being an action entirely similar to the one at bar. In that case (Mayor v. Third Ave. R. R. Co., 117 N. Y. 404–409, 22 N. E. 755) the court said:

"The general meaning or governing sense of the resolutions [meaning those set forth in the agreement or grant] which recite the defendant's obligation is obvious enough. It is that, in consideration of the franchise it bargains for, it shall pay a license fee; it is to pay such fee from the opening of the road, annually; and it is to pay, not a fee thereafter to be imposed, but a fee already imposed, and then existing in favor of the city. The ordinance [being the same one above recited] then actually in force contains everything necessary to answer those conditions, but the contention of the defendant is that it enumerates as its subjects 'a stage,' 'an accommodation coach,' 'a stage coach,' and is altogether silent as to 'railroad car,' or even 'car.' We are unable to see the force of the observation. In definition, a 'car' or 'coach' or 'stage' or a 'stage coach' is the same. They are vehicles that turn, or that run by turning, on wheels. * * * 'It is plain that by adaptation and improvement the modern railway car has been evolved from the old-fashioned stage coach.'"

The court, then pursuing its discussion further, says:

"We are therefore to look at the context of the resolution, and the circumstances under which it was adopted, and especially at the matter which the

parties had in contemplation"—and concludes its opinion as follows: "The receipt of revenue as part of the consideration of the granting of the new franchise was the object aimed at by the city, and its payment was part of the price agreed upon by the other party. Both, then, had a license fee in contemplation, and it is conceded that there was no other than that prescribed by the ordinance [supra] on which the plaintiff relies. We think the fee mentioned in the ordinance was within the intention of the parties as expressed in the agreement, and concur with the court below in the conclusion that its payment may be properly enforced."

In Mayor v. Broadway & Seventh Ave. R. R. Co., 97 N. Y. 275, the court, referring to the payment of license fees to the municipality by a street railroad company, stated that "the right of the city to collect license fees was evidently based upon the idea of privileges conferred by the franchise granted, and as a compensation for the same." At page 281 the court says:

"It is a well-settled rule that any ambiguity in a grant of privileges must operate against the grantee and in favor of the public. This is fully established by the adjudications in this country and in England. [Citing many authorities.] The fee of the streets being in the city for public purposes and upon public trusts, and the use of the streets being given to a private corporation for private gain without compensation, and the corporate authorities of the city being the representatives of the public in the assertion of their rights, the principles of construction stated should be held to apply the same as between corporations and individuals. The strictest rules of interpretation can therefore be properly invoked. The contract of the defendant arises from the provisions of its charter by which it agrees to pay a certain sum reserved therein in consideration of the privileges conferred thereby. It is neither a tax, nor is it a penalty, and hence the technical rules as to penal actions or suits to recover a tax have no application."

The effect of the foregoing decisions clearly is that the defendant, in consideration of the privilege conferred upon it to operate its railroad, agreed that a license fee shall be annually paid to the plaintiff's predecessor and its successors for each car used on its road; the rate of said license fee or compensation so to be paid being measured by the amount of the license fee then in vogue under the ordinance of 1839 for vehicles drawn by two horses, to wit, the sum of $20. In other words, after the execution of the agreement the amount of the license fees to be annually paid by the defendant was to be exclusively controlled by the special agreement between the parties—that is, $20 the amount then "allowed by law"—and not by virtue of any ordinance then in force or thereafter to be enacted. This conclusion is fortified by a consideration of chapter 140, p. 323, of the Laws of 1854, being an act entitled "An act relative to the construction of railroads in cities," section 3 of which, by its terms, confirms the licenses provided for in the agreement or grant of January 1, 1853, to the defendant, as follows:

"This act shall not be held to prevent the construction, extension or use of any railroad, in any of the cities of this state, which have already been constructed in part; but the respective parties and companies, by whom such roads have been in part constructed, and their assigns, are hereby authorized to construct, complete, extend and use such roads in and through the streets and avenues designated in the respective grants, licenses, resolutions or contracts under which the same have been so in part constructed, and to that end the grants, licenses and resolutions aforesaid are hereby confirmed."

If the payment of an annual license fee to the city is fixed by agreement, how can the voluntary act of the defendant in changing

the motive power of its cars from horses to cable, and then to electricity, relieve it from such payment? It will be observed that the grant or agreement contains no provision requiring the defendant to operate a horse railroad. The grant is unlimited as to the motive power to be employed, save only that "no steam power be used on any part of the road for propelling cars." As the parties, by their agreement, evidently contemplated that power other than that furnished by horses might at some time be employed in the operation of the cars, it is significant, if it was intended to limit the payment of license fees to cars drawn by horses, that it was not so expressed in the agreement or grant. Unless the fees were unalterably fixed by the agreement, what necessity, indeed, was there to say anything in the grant about the amount of the license fees, inasmuch as the ordinances from time to time in force would in that respect sufficiently safeguard the city, and furnish the basis of the amount of license fees which the defendant would be obliged to pay? The defendant strenuously and properly maintained the position that the ordinances generally in force had no application to it when it refused to pay the additional license fees contemplated by an ordinance adopted subsequent to the grant. Mayor v. Third Ave. R. R. Co., 33 N. Y. 42. It follows, therefore, that the license fees mentioned in the grant are not limited to the cars drawn by horses, but are applicable to all cars, irrespective of the mode of propulsion.

As to the defense of the statute of limitations, it has been sufficiently shown that the right to a recovery in this case arises out of a contract, which it appears is under seal, and therefore not affected by a six-years limitation. Code Civ. Proc. § 381. The case of Mayor v. Broadway & Seventh Avenue R. R. Co., 17 Hun, 242, cited by defendant, is readily distinguishable from the present case, because there the fees sought to be recovered were claimed by virtue of the statute, and not under a contract under seal.

Inasmuch as the parties have stipulated as to the number of passenger cars operated during the years 1894 to 1899, inclusive, judgment will be rendered in favor of the plaintiff for the amount computed upon the basis of $20 per annum per car, to wit, the sum of $25,720, together with interest thereon and costs.

Judgment for plaintiff.