PATRICK MYERS vs. HUDSON IRON COMPANY.
MICHAEL FLYNN vs. SAME.
MICHAEL KANE vs. SAME.
JOHN FALLON vs. SAME.

Berkshire.    September 10, 1889. — November 26, 1889.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Personal Injuries — Master and Servant — Dangerous Machinery — Risks of
Employment — Fellow Servant's Negligence — Evidence.*

A mine was reached through a vertical shaft by a bucket lowered by the un-
winding of a rope from the uncoupled drum of a hoisting-engine and usually
controlled in its descent by a brake operated by the engineer. Laborers em-
ployed in the mine entered the bucket to descend as usual, and, upon word
being given, the engineer started to let it down, but soon found that the brake
was not holding. The bucket fell rapidly for many feet, when it was suddenly
stopped by planks across the shaft, and the laborers were hurt. In actions
against the employer to recover for such injuries, there was evidence that the
brake, besides a loss of initial efficiency, was in design and original construction
insufficient; that there were safer contrivances for controlling such a descent,
some of which the defendant used elsewhere about the mine; and that gearing
used in hoisting had, through wear and a change made in it by the defendant,
become less useful as a possible means of stopping the bucket if the brake
failed to hold, and in fact proved ineffectual to stop the bucket at the time;
also that no person had previously been hurt in going down in the bucket.
*Held*, that the cases were properly submitted to the jury, who were warranted
in finding verdicts for the plaintiffs.

At the trial evidence was admitted that there were other appliances for lowering
a bucket than that used by the defendant which would have been safer; that
slips on other occasions had been brought to the knowledge of the defendant's
superintendent of the bucket while it was in use in hoisting ores, and, upon
the question whether the holding quality of the leather forming the friction
surface of the brake had become impaired from the effect of steam upon it, that
there was machinery at the foot of the shaft operated by steam and its use,
from which steam escaped into the engine-building. *Held*, that the evidence
was properly admitted.

FOUR ACTIONS OF TORT for personal injuries occasioned to
the plaintiffs, on October 15, 1884, while in the employment of
the defendant corporation, by falling down a mining shaft by
reason of defective machinery. The cases were tried together
in the Superior Court, before *Bishop*, J., who allowed a bill of
exceptions, in substance as follows.

The defendant was the owner of an iron mine at West Stockbridge, and the plaintiffs were employed by it to work as laborers in the mine in various capacities. Access was had to the mine by means of inclines or chutes, and by three vertical shafts numbered 1, 2, and 3. At the mouth of shaft No. 1, which descended for one hundred and fifty feet to the bottom of the mine, the defendant maintained a steam-boiler and connected machinery for the pumping of water and hoisting of ores from the mine, all covered by an engine-house for protection from the weather. This machinery consisted of an engine for hoisting and pumping, a drum, a clutch and brake, and a wire rope or cable for attachment to buckets used in raising the ore. An assistant engineer was in constant attendance on this machinery, to manage and control it. A steam-pipe placed in the shaft connected the engine and boiler with a pump at its foot upon the bottom of the mine. The drum consisted of an iron cylinder revolving horizontally upon a shaft, which in connection with the engine and by means of the clutch was used to wind up the wire rope or cable in hoisting the ore. This clutch was on the same shaft, and was prevented from revolving by splines projecting from each, but could be moved towards the end of the drum by a lever. The drum and the clutch had each two protruding horns of iron, so placed that, when brought into contact by means of the clutch lever, they could be operated together as one piece of mechanism, and made to revolve by the engine until the cable was wound up and the bucket of ore raised to the surface of the ground. After the cable had been wound upon it, the drum could, by detaching the clutch, be used in lowering, the bucket or any other load descending by its own weight. Before using the drum in lowering, the engine was stopped by the assistant engineer and the clutch was moved by the clutch lever from the drum, the handle of the lever being then dropped into a slot or rest, where it remained until again needed. The descent of the bucket or load was regulated by what was called a shoe-brake, also operated by the assistant engineer by means of a brake lever. The friction surface of the shoe-brake was covered with several thicknesses of sole leather, and applied by pressure on the lever to a brake-band consisting of an iron rim at the end of the

cylinder of the drum and raised slightly above it. The levers for applying the clutch and the shoe-brake were placed beside each other, within convenient reach of the assistant engineer, and they could be operated and the change from hoisting to lowering made by an instantaneous movement on his part, the bucket and its load being held in suspension as desired, either by the clutch and engine or by the shoe-brake alone. The engine and clutch and the shoe-brake were built to order for the defendant for use at this mine, and both the brake and the clutch were in open view of every person who entered the engine-building. The defendant's machinery at the mine was examined about three weeks before the accident, and was put in repair by Myron Parker, an engineer and machinist. Parker testified that in making the repairs he took off the clutch, fitted in two new splines, moved the drum from where it had worn the shaft, and bevelled and chipped the horns on the clutches' and filed the splines, tested these repairs, and left everything in order; that he moved the brake on the brake beam to correspond with that of the drum, and took off the brake and examined it; that he took off the leather from the brake and examined it, and both found and left it in good condition; and that everything necessary to be done was done in the way of repairs at the time, and left in good condition. The defendant contended that Parker was a competent and skilful engineer; but this was contradicted by the plaintiffs, who also contended that the repairs were not of the character stated by the witness.

The defendant contended that the hoisting was to be done and controlled by the clutch, drum, and engine, and the lowering by the shoe-brake and its lever alone; and introduced evidence to support this contention. The plaintiffs contended that the clutch and clutch lever could also be used in connection with the engine and drum to check the descent of a bucket or load, and that the clutch was a safeguard for lowering; and introduced evidence to support this contention.

There was evidence tending to show that the defendant's workmen were at liberty to go to and from their work by way of ladders down a chute, or by means of a bucket down a shaft, and that the class of workmen to which the plaintiffs belonged uniformly went by means of the bucket and shaft. The judge

left it to the jury to say whether the plaintiffs had a right to go into the shaft and bucket, and were properly there, and gave the jury instructions upon due care on the part of the plaintiffs, which were not objected to by the defendant.

On the morning of the accident the plaintiffs gathered as usual at seven o'clock in the engine-house at shaft No. 1, preparatory to descending to their work, and the assistant engineer was there on duty. They got into the bucket, which was held in suspension by the wire rope and the shoe-brake held against the brake-band by the lever in the assistant engineer's hands. The assistant engineer heard the last of the plaintiffs who entered the bucket shout "All right," whereupon he started to let down the bucket into the shaft, and after it had descended a few feet he found the brake was not holding, and called for help to others in the engine-room, and they came to his assistance at once, some bearing down on the brake with him; but the descent of the bucket continued with velocity for about one hundred and twenty-five feet, when the bucket was suddenly stopped by landing-planks across the shaft at the entrance to one of the levels of the mine, and by the collision the plaintiffs were injured. The defendant's chief engineer, who came to the aid of the assistant engineer at the time of the accident, testified that, in bearing down upon the brake with one foot, his foot slipped, and in steadying himself he accidentally pulled the clutch lever lying alongside the brake lever and threw the clutch gear with its horns into position, as used when hoisting, against the counter horns on the end of the drum; but with the then increased velocity of the revolutions attained by the drum, the clutch at once flew out and in again, and so continued to do until it broke the clutch lever by the striking together of the horns at each of the rapid revolutions of the drum while unwinding the rope as the bucket with the plaintiffs in it descended.

The plaintiffs contended, and introduced evidence tending to show, that the machinery was insufficient for the purpose of lowering weights equal to the average weight of four men; that in design and construction a shoe-brake of the dimensions of the one in question, used in connection with a clutch gear, was sufficient and intended only for lowering an empty bucket; that

the brake-band had been worn from a smooth surface into ridges by nails used in fastening the leather to the wooden part of the brake; that the brake-shoe did not cover the whole width of the brake-band, but was allowed to extend over the front edge of the band about half an inch, leaving as much as half an inch on the back side unused; that the shaft on which the drum revolved and the boxes of said drum had become so worn that there was about a quarter of an inch space between the shaft and the box of the drum; that by reason of each of these alleged defects the holding qualities of the brake were diminished; that, by reason of the wear between the drum and shaft aforesaid, larger quantities of oil had to be used to lubricate it, and larger quantities of oil ran out upon the head of the drum and upon the rim of the drum than otherwise would have done, and this impaired the holding qualities of the brake; that when the engine was hoisting the bucket, the brake rested lightly on the brake-band, and there was a slight lateral play of the drum on the shaft and a slight lateral play of the brake, which made one rub on the other, and that this had a tendency to pull the oil from the edge of the brake-band under the brake and so lubricate it, thereby impairing the holding power of the brake; that the holding qualities of the leather on the brake had become impaired from the effect of steam, which came up out of the shaft in large quantities and frequently came into the room where the machinery was; that this steam came from pipes and from a pump used down at the bottom of shaft No. 1, and from the pipes and boilers in the engine-room; that during the night before the accident steam had condensed on the brake-band, and there was water on the brake-band when the plaintiffs started to descend, although there had been no steam there since midnight; that the machinery had been in constant use for over twenty years by the defendant; that when new the faces of the horns of the clutches were square, and after being used for a while were cut bevelling by the defendant; that this bevel had been increased by the wear of the machine so much that at the time of the accident there was great liability of the clutches flying apart; that from this change and wear in the horns of the clutches, the use of the clutches in connection with the brake as a means of arresting the descent of the bucket had been impaired; that

this bevel of the clutches had operated to push the brake-band away from the brake, and to produce the irregular motion of the drum, and a wear in the movable part of the clutch, and to weaken the clutch bar so that the clutches did not fit closely to the head of the drum when they were in operation; that the clutch bar had been broken and bent, and mended by heating a great many times, affecting the strength of it; and that a reversible engine for lowering with the clutch gear would have been safer.

The defendant's superintendent, called by it as a witness, testified that in other instances the machinery at shaft No. 1 had worked in hoisting and lowering heavy weights without difficulty or trouble; and that the machinery had been substantially for years the same as it was at the time of the accident. On cross-examination, he testified that at times steam came up that shaft and condensed upon the top of the brake-band, and formed water there; that water would have a tendency to cause the brake to slip and fail to hold; and that there was in use at shaft No. 2 a strap-brake; and he described a strap-brake, and how it differed from other appliances, without objection. He was then asked by the plaintiffs' counsel whether with such a brake there would be any space left for anything to get upon the brake-band, and was permitted to answer, against the defendant's objection, that such a brake would not entirely cover the top of the brake-band, and that things might still drop upon the band; that at shaft No. 3 the brake in use was called a friction V brake; and he was permitted, also against the defendant's objection, to describe what such a brake was; and the defendant excepted.

The plaintiffs offered to show defects in the clutch gearing, to all of which the defendant objected, on the ground that those portions of the machine were not only distinct in design and function from the brake or lowering part of the machine, but were designed and used only for hoisting. The judge overruled the objection, and ruled that it was a question of fact whether the machinery for lowering, which the plaintiffs had a right to require the defendants to use reasonable care in keeping in proper condition, included the clutch gearing or not, and instructed the jury that they were to judge upon the evidence what the part of

the machinery used in lowering was, whether as contended for by
the plaintiffs or by the defendant, and admitted the evidence.

The plaintiffs were permitted to introduce evidence, against
the defendant's objection, of machinery down in the mine,
viz. the pump referred to at the bottom of the shaft, operated by
steam from the engine-building at shaft No. 1, and its use and
the escape of steam from it and from the steam-pipes in the
building, and from the shaft into the engine-building and its
density there, and the general condition before the accident of
the atmosphere in the engine-house as affected by such steam,
to all of which the defendant excepted.

The plaintiffs were permitted to introduce evidence, against
the objection of the defendant, of instances of slips that had
occurred in the use of the ore bucket in hoisting ores in the
defendant's shaft No. 1, before the accident, and had been
brought home to the knowledge of the defendant or of its
superintendent.

The jury took a view of the locality, and of the machinery
in question.

The judge instructed the jury, among other things, that
employers holding the relation of the defendant assumed and
undertook the obligation of using due and proper care to se-
lect machinery which should be reasonably safe and proper
for use, and to maintain the machinery in that condition, and
were also bound to use due and proper care in the selection
of their servants and agents to manage and conduct their busi-
ness; that they were not bound to procure and maintain ma-
chinery which should be absolutely safe, but were bound to use
reasonable care and vigilance to obtain machinery which should
be such; that the employer is bound to use reasonable care in
the selection of those whom he employs, and in keeping the
engines with which, and the buildings, places, and structures
in, upon, or over which, his business is carried on in a fit and
safe condition, and is liable to any of his servants for injuries
suffered by them by reason of his negligence in this respect;
that employers do not owe to their workmen the duty to fur-
nish the best known or the best conceivable appliances, but
they are under a duty to furnish reasonably safe and suitable
appliances, such as a prudent man would furnish if his own

life were exposed to the danger that would result from unsuitable or defective appliances; that an employer is not to be considered as warranting the safety of the machinery which he employs, or that accidents should not happen in the use thereof; that the question for the jury was not whether the defendant omitted something it could have done, or could have supplied, to make its structures or machinery more safe, but whether in selecting and maintaining the same for use it was reasonably prudent and careful, — not whether better machinery could have been obtained, but whether that which was provided was in fact adequate and proper for the use to which it was to be applied, if not negligently or carelessly used; that in considering the question of what it was reasonable for the defendant to have been expected to do, the jury might consider the evidence as to other slips; that if they found that there was evidence of slips or failures of the machinery to work on other previous occasions, that was no evidence that there was a defect on this occasion; that such slips or failures on other occasions would not prove or tend to prove that there was a similar occurrence on this occasion, or that there was a defect on this occasion, but that if there were other slips, other occasions when the brake failed to hold, brought home to the knowledge of the defendant corporation, or of the superintendent as its representative, the jury might consider those facts as bearing upon the question whether the defendant was or was not in the exercise of reasonable care in continuing the use of the machine; that reasonable care might be a different thing in a man using a machine which had never been known to him to be defective in its operation, from what it would be if he continued in the use of the same machine when apprised of the fact that it had miscarried in its working; that the same principle held with reference to the comparison of this machine with other machinery or apparatus for accomplishing the same purpose; that the jury could not say that, because a better or safer piece of machinery or appliance was in existence, therefore the machinery or appliance used was defective, and the defendant negligent in selecting it, but the fact that there are other kinds of machinery and apparatus might be taken into account in determining whether the defendant exercised due and sufficient care

in selecting the machinery which it did select, in connection
with every fact concerning the machine; and that it would de-
pend somewhat upon how long each piece of mechanism had
been in use, to what extent it had been used, where it had been
used, how fully the selecting party was apprised of its use, or
ought to have been apprised of its use by a fair and reasonable
exercise of his prudence, care, and vigilance, — all as considera-
tions bearing upon the single question whether he did or did not
exercise reasonable care and prudence in the selection.

The defendant contended that the evidence in these cases was
insufficient to enable the plaintiffs to recover, and requested the
judge to instruct the jury to return verdicts for the defendant;
but the judge declined so to do, and submitted the evidence to
the jury.

The jury returned a verdict for the plaintiff in each case; and
the defendant alleged exceptions.

*H. L. Dawes & T. P. Pingree,* (*M. Wilcox* with them,) for
the defendant.

*J. F. Noxon & W. Turtle,* for the plaintiffs.

C. ALLEN, J.    The several plaintiffs, who were underground
laborers in the defendant's mine, were undertaking to descend
into the mine through a perpendicular shaft by means of a
bucket, as they had been in the habit of doing.    The bucket
was supported by a wire rope or cable, which wound around
a drum, and it was usually controlled in its descent by means
of a shoe-brake which pressed upon the rim of the drum.    This
shoe-brake was operated by the defendant's assistant engineer,
by means of a lever.    On the occasion of the accident, the plain-
tiffs had all entered the bucket, and, upon word being given,
the assistant engineer started to let down the bucket, and after
it had descended a few feet he found the brake was not holding,
and the bucket fell rapidly for about one hundred and twenty-
five feet, when it was suddenly stopped by landing-planks across
the shaft, and the plaintiffs were hurt.    At the trial, much evi-
dence was introduced by the plaintiffs and by the defendant,
at the conclusion of all of which the defendant requested the
court to instruct the jury to return verdicts in its favor; but
the court declined to do so, and submitted the cases to the
jury, who returned verdicts for the several plaintiffs.    There

was no request for any special instruction as to the rules of law applicable to the cases, and no exception was taken to the instructions which were actually given to the jury; but the defendant's complaint is, that the whole evidence was insufficient to warrant the verdicts for the plaintiffs.

One ground upon which the defendant has relied in the argument before us has been, that, upon the facts disclosed, the plaintiffs must be held to have assumed the risk of the safety of the machinery. There are many cases in which plaintiffs have for this reason been held to be debarred from recovering damages for injuries. But in the present case we do not find undisputed facts sufficient to make such a course proper. The risk of the safety of machinery is not assumed by an employee, unless he knows the danger, or unless it is so obvious that he will be presumed to know it. He takes the risk of known or obvious dangers, and not of others. *Scanlon* v. *Boston & Albany Railroad*, 147 Mass. 484, 487. *Ferren* v. *Old Colony Railroad*, 143 Mass. 197. *Linch* v. *Sagamore Manuf. Co.* 143 Mass. 206. *Ford* v. *Fitchburg Railroad*, 110 Mass. 240, 259. It was no part of the plaintiffs' duty to operate the machinery for lowering the bucket. . Their work was under ground. We cannot say that the risk was so obvious that they must be held to have assumed it. The defendant even now strongly resists the inference that the machinery was in fact dangerous or unsuitable for use, and argues that the evidence conclusively shows the contrary. The plaintiffs might well rely somewhat upon the expectation that the defendant would provide proper machinery for lowering them to their work, and they were not called upon to be over strict in an examination into its safety. We cannot say that, as matter of law, the plaintiffs must be held to have taken the risk, and that for this reason they are debarred from a recovery.

We have next to consider whether there was sufficient evidence to warrant a finding by the jury that the defendant did not exercise reasonable care in providing a safe machine. The court instructed the jury, in terms to which no exception was taken, that the defendant was not bound to procure and maintain machinery which should be absolutely safe, or to furnish the best appliances which were known or conceivable; that the

question for the jury was not whether the defendant omitted something which it could have done, or could have supplied, to make its structures or machinery more safe, but whether in selecting and maintaining the same for use it was reasonably prudent and careful; and that the fact that there were other kinds of machinery and apparatus might be taken into account in determining whether the defendant exercised due and sufficient care. The only question upon this part of the case therefore is whether the plaintiffs were entitled to go to the jury upon the charge of a want of due care on the part of the defendant. The defects relied upon were, a want of sufficient holding power in the brake, and the absence of any contrivance sufficient to stop the bucket in case the brake should fail. In reference to the brake, the plaintiffs introduced evidence tending to show that in its design and original construction a shoe-brake of the dimensions used in this instance was insufficient; that the defendant itself had in use elsewhere two other contrivances, namely, a strap-brake, which would come in contact with more of the surface of the brake-band and a friction V, so called, either of which would hold better than the shoe-brake; also that a clutch machine which could be operated by a reversible engine both ways, in descending as well as in ascending, would be safer. The plaintiffs also introduced evidence tending to show that in various ways the original efficiency of the shoe-brake had become impaired; namely, that the brake-band had been worn from a smooth surface into ridges by nails used in fastening the leathers to the wooden part of the brake; that the brake-shoe did not cover the whole width of the brake-band, but was allowed to extend over the front edge; that the shaft on which the drum revolved and the boxes of the drum had become so worn that there was about a quarter of an inch space between the shaft and the box of the drum; that by reason thereof a larger quantity of oil ran out upon the head and band of the drum than would otherwise have done; that the holding qualities of the leather on the brake had been impaired from the effect of steam; and that in all these various ways the brake had become less efficient than it had been at the outset.

The plaintiffs also introduced evidence tending to show that the clutch gear, which was used in hoisting ore from the mine,

but which was disengaged when the bucket was to be lowered, might by possibility be used to stop the descent of the bucket in case of the shoe-brake's failing to hold; and that this, by reason of wear and of a change which had at one time been made by bevelling the faces of the horns of the clutches, had become less useful as a possible means of arresting the descent of the bucket, and that in fact it had proved ineffectual to stop such descent at the time of the accident. The defendant in reply introduced much evidence which certainly was sufficient to serve as the basis of a strong argument to the effect that due care had been used in providing and maintaining the machinery in question; but we are unable to say that this evidence so conclusively overcame the force of the plaintiffs' testimony as to require from the jury a finding in favor of the defendant. It appeared, amongst other things, that three weeks before the accident a machinist, Parker, was employed to put the machine in good order. But if he failed to do so, and if after the completion of his work defects remained, the defendant was responsible, although it may have had reason to suppose him well qualified for his duty. *Moynihan* v. *Hills Co.* 146 Mass. 586. *Daley* v. *Boston & Albany Railroad*, 147 Mass. 101, 114.

The defendant greatly relies upon the fact, that no person had ever before been injured in descending the shaft by means of this bucket, although it had been much used for that purpose, and urges us to adopt and apply to the present case a rule stated by the Court of Appeals of New York in the following terms: " When an appliance or machine not obviously dangerous has been in daily use for a long time, and has uniformly proved adequate, safe and convenient, its use may be continued without the imputation of imprudence or carelessness." *Stringham* v. *Hilton*, 111 N. Y. 188, citing *Lafflin* v. *Buffalo & Southwestern Railroad*, 106 N. Y. 136, and *Burke* v. *Witherbee*, 98 N. Y. 562. But it is hardly practicable to express by a single formula a rule which shall be applicable to all cases. The rule above stated may have needed no qualification as applicable to the case then before that court. The court had already declared that "there is no ground for an apprehension even that the machine or its appliances had been impaired by use, or that, for any reason, it was less safe or efficient than at first"; and again, " If

there was any defect it must have been in its original construction"; and it held that the undisputed evidence showed that the machine was sufficient in its construction, and was of a kind commonly in use when it was put in, and that it was plain that the injury to the plaintiff was caused by the act of the engineer, who was a fellow servant with the plaintiff. In the present case, the fact that no person had previously been hurt in descending the shaft was entitled to much weight; but in our opinion it was not conclusive of the defendant's due care, especially in view of the evidence tending to show that the original efficiency of the brake had become impaired. The defendant also urges that we should reach the same conclusion arrived at by the court in that case, to wit, that the injury to the plaintiffs was caused by the act or negligence of the engineer. But this, in the case before us, was a matter for the jury rather than for the court. No special ruling was asked for at the trial as to the effect of negligence of a fellow servant, if proved, and we have only to consider whether the court should have withdrawn the case from the jury. If the defendant failed to use due care, it might be held responsible, although the negligence of a fellow servant with the plaintiffs contributed to the accident; but if we could see that the accident was caused solely by the neglect of a fellow servant, the plaintiffs would not be entitled to recover. *Griffin* v. *Boston & Albany Railroad*, 148 Mass. 143, 145, and cases there cited. As has often been stated, each case must depend on its own circumstances. In the present case, we cannot say that it conclusively appears that the accident occurred solely from the neglect of the engineer. There are indeed strong arguments in favor of the defendant, which might be urged to any tribunal dealing with the facts; but we are not called upon to decide as to their weight, further than to say that they do not convince us that it was the duty of the court to hold, as matter of law, that there was no evidence which would warrant verdicts for the plaintiffs. We think the jury who viewed the premises, and who saw and heard the witnesses, were warranted in finding verdicts for the plaintiffs, under the rules of law which were applicable to the cases.

Objections were made at the trial to the introduction of certain matters of evidence, which need to be considered. The

plaintiffs were allowed to show that other machinery or appli-
ances than those used by the defendant would have been safer;
for example, a strap-brake, a friction V, so called, or a reversi-
ble engine.  In order to aid the jury in determining whether
the defendant had exercised reasonable care in providing and
maintaining the machinery actually in use, it was competent to
show what other kinds of machinery or appliances were used
elsewhere, and might have been used at shaft No. 1.  *Wheeler*
v. *Wason Manuf. Co.* 135 Mass. 294, 298.  It does not follow
from the introduction of such evidence that the defendant was
bound to use the very safest or newest, or any particular, ma-
chinery or appliances; but, as " reasonable care " is a relative
term, the jury might properly consider what could be done to
secure safety, and the evidence was competent.  The rule of law
as to the master's duty, as has already been said, was given to
the jury in terms to which no exception was taken.

The plaintiffs were also permitted to prove instances of slips,
brought home to the knowledge of the defendant's superintend-
ent, that had previously occurred in hoisting ores in the bucket
in shaft No. 1.  The defendant's objection to this evidence rests
chiefly on the ground that, in hoisting ores, the clutch gear was
used, while in lowering the bucket its descent was regulated by
the shoe-brake.  It is not stated in the bill of exceptions that
an exception was taken at the trial to the admission of this
evidence; but both parties have argued the question of its com-
petency, and we think it was competent.  If the clutch gear for
any reason failed to hold, the brake might be used to check the
descent of the bucket; in like manner, according to the con-
tention of the plaintiffs, the clutch gear might or ought to be
available for the same purpose if the brake should fail to hold.
There was evidence tending to show that, at the time of the
accident to the plaintiffs, an attempt was made to check the
descent of the bucket by means of the clutch gear, but that it
was not successful.  The plaintiffs contended that the machin-
ery as a whole, with the shoe-brake and the clutch gear, was in-
sufficient properly to control the descent of the bucket, and was
therefore unsafe and defective; and that the defendant did not
exercise reasonable care in continuing its use.  We think the
evidence objected to was competent.  The defendant contended

that the machinery had uniformly proved adequate prior to the accident. The evidence in question tended to show the contrary. The defendant was at liberty to prove, if it could, that the former slips occurred from some other cause than a defect in the machinery. The possibility that this might be so did not render the evidence of such former slips incompetent. *Wooley* v. *Grand Street & Newtown Railroad,* 83 N. Y. 121, 130.

The plaintiffs contended that the holding quality of the leather of the brake had become impaired from the effect of steam, which came up out of the shaft in large quantities, and frequently came into the room where the machinery was; that it came from pipes and from a pump used at the bottom of the shaft; and, as a part of the evidence tending to establish this, they were allowed to introduce evidence of the machinery down the mine, namely, the pump at the bottom of the shaft, operated by steam from the engine-building belonging to shaft No. 1, and its use, and the escape of steam from it into the engine-building. This was all with reference to the plaintiffs' contention that the efficiency of the leather upon the shoe-brake had become impaired by the effect of the steam upon it; and was clearly competent. Whether the efficiency of the brake could or naturally would be thus impaired, whether there was steam enough to produce this effect, and whether in point of fact this effect had been thus produced, were all matters of fact. The circumstance that there had been no steam for seven hours before the accident did not render the evidence incompetent. There was evidence that there was water from condensed steam upon the brake-band when the bucket started to descend. But, besides, the plaintiffs' contention went further, and they insisted that the quality of the leather had become impaired from the effect of the steam which was habitually or often upon it.

*Exceptions overruled.*