VOIGT *v.* MICHIGAN PENINSULAR CAR CO.

MASTER AND SERVANT — DEFECTIVE APPLIANCES — NEGLIGENCE — EVIDENCE.

> Plaintiff's intestate, a fireman in the employ of defendant, was killed by the bursting of a joint in a steam pipe. While the cause of the explosion was entirely speculative, it was plaintiff's theory that it was occasioned by a defect in the joint itself, and he introduced evidence to show that the joint had been leaking for a long time prior to the accident, and that afterwards a crack was discovered therein of such a character that it must have existed for some time. There was no evidence that the joint was improperly constructed, that the leakage in itself was a signal of danger, or that an inspection would have revealed the defect. *Held,* that defendant was not liable. MONTGOMERY and HOOKER, JJ., dissented, being of opinion that the testimony of certain experts raised a question for the jury.

Error to Wayne; Carpenter, J. Submitted November 11, 1896. Decided May 11, 1897.

Case by William D. Voigt, administrator of the estate of Charles Lindow, deceased, against the Michigan Peninsular Car Company, to recover damages for the death of plaintiff's intestate, alleged to have been caused by defendant's negligence. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Affirmed.

Plaintiff's intestate, Charles Lindow, was employed as fireman by the defendant company, and on the night of October 13th was in exclusive charge of the fire room. There were six boilers in the room. The steam from them was conveyed through a single steam pipe on the west wall of the boiler room, and about 20 feet above the ground. There were two expansion joints in the steam pipe, shaped like two saucers, put together face to face, and bolted along the edge. The steam pipe entered these joints at the center, and they are for the purpose of assisting the pipe in expanding and contracting when in use. The diameter of the steam pipe was about six inches, and that of the expansion joint three feet. These joints were made of iron, and between the flanges at the edge, where the bolt passed through, was placed rubber packing, called a "gasket." One of the duties of the fireman was to watch the pressure of steam in the boilers, and see that it did not get too high. About 1 o'clock in the morning, one of these joints burst, and scalded Mr. Lindow so seriously that he died a few days afterwards. At the conclusion of the plaintiff's evidence, the court directed a verdict for the defendant, and gave its reason therefor in the following language:

"It appears from the testimony in this case that he met his death from the explosion or bursting apart of this expansion joint connected with this steam apparatus. The rule of law is well settled in such cases that, in order to recover, the employé must show negligence on the part of the management; that is to say, he must show that there was such a condition before the injury occurred that proper care on the part of the employer would have discovered the danger, and remedied it. Now, the testimony in this case indicates that, after this explosion had occurred, an examination showed that there was a fracture, part of which was old and part new; but it does not show that that old fracture was in such a condition that it could have been discovered before. Indeed, it is not contended that there was any visible evidence of that old fracture before the explosion occurred. The testimony also indicates that, for some time before this explosion occurred,

there was an escape of steam or water visible at the rim of these two plates, so called. Now, there is nothing in the testimony that will indicate that that escape of steam or water was in any way the result of the fracture above. All the witnesses testified to that. And, even if there was an indication from the escape of this steam and of this water that there was something wrong at that point, —that is, at the rim,—the evidence in the case does not indicate that this explosion occurred from the effect of that. So that the testimony seems to me to be lacking in its failure to indicate any negligence on the part of the management."

*Thomas Hislop*, for appellant.

*Wells, Angell, Boynton & McMillan* (*A. C. Angell*, of counsel), for appellee.

GRANT, J. (*after stating the facts*). The instruction was correct. No complaint was made that the joints were not properly constructed. Plaintiff's own witnesses testified that the leaking of water and of steam was no indication that the joint was unsafe, or that there was danger of an explosion in consequence thereof. In other words, it was not a signal of danger. The joint had been leaking for a long time, and it is in evidence that leaks at such joints are common. There is no evidence to show that an inspection would have revealed a defect. The explosion itself is no evidence of negligence. The burden of proof was upon the plaintiff to show some facts or circumstances from which it could be legitimately inferred that the defendant was negligent in the failure to inspect or to repair the defective joint when it had, or should have had, notice of the defect. The cause of the explosion is entirely speculative. It may have resulted from too high pressure of steam, for which the deceased alone would be liable; it may have resulted from a hidden defect, or from a failure to inspect it; it may have been that a close inspection would have revealed the small crack which some of the witnesses testified was found in the piece broken off, and that this crack weakened the joint, and rendered

it unsafe.   But there was no evidence to sustain any of
these theories.   *Miller* v. *Railway Co.*, 90 Mich. 230;
*Redmond* y. *Lumber Co.*, 96 Mich. 545; *Robinson* v.
*Charles Wright & Co.*, 94 Mich. 283.   Many other de-
cisions might be cited, but the principle is too well estab-
lished to require the citation of authorities.

The judgment is affirmed.

Long, C. J., and Moore, J., concurred with Grant, J.

Montgomery, J.   I dissent from the conclusion of Mr.
Justice Grant in this case.   If, in fact, a leakage at the
joint was not a signal of danger, and if there was no evi-
dence to show that an inspection would have revealed a
defect, I should readily concur in the conclusion reached
in the main opinion that the defect was a latent one, and
that negligence of the defendant was not affirmatively
shown.   Plaintiff offered testimony tending to show that
there was an old crack in the joint, from the inner face of
the joint outward, which extended clear through, and
that after the explosion this old break and the new break
ran into one another, so that there was only one side of
the break left to both the old and the new.   There was
also testimony by experts that it would be considered un-
safe to continue the use of this plant when there was such
a leak that, when pressure was high, large quantities of
steam escaped at the expansion plates.   An expert also
testified that, if there were large quantities of steam es-
caping at the expansion plates, he would consider that
there was something wrong with the expansion joint or
plates; and that, if there was steam or water escaping, he
should consider it his duty to make an examination to
find out where the escape was.   If the leak was coming
through the plate, it would indicate that there was some-
thing wrong about the plate; if it was merely coming
from a joint, it would indicate that the joint was leaking,
and not the plate.   He further testified: "I think it
would be somewhat difficult to tell where it might be com-
ing from, looking up at it at the distance of 20 feet

from the ground.   I should want a closer examination,—
to get close to it.   After getting close to it, if I could not
find any opening on the outside, or feel the steam coming
through at any of the joints, and still there was a leak
somewhere, I should consider it my duty to take that
plate apart, and examine them inside." He further testi-
fied: "If there is a leak, it might not be just at the
joint, or where it is dropping from." I think, under this
testimony, it was a question for the jury as to whether a
defect existed which might have been discovered by
proper inspection.

HOOKER, J., concurred with MONTGOMERY, J.