HARRY BRYCE v. THE BURLINGTON, CEDAR RAPIDS & NORTHERN RAILWAY COMPANY, Appellant.

**Personal Injury:** ENGINE COUPLER: ASSUMPTION OF RISK: STATUTES CONSTRUED: INSTRUCTIONS. Code sections 2079-2082, when
1 construed as a whole, do not require that engines be equipped with automatic couplers, and an employe injured by the negligence of the company in using an old style coupler for the engine is not within the provisions of Code, section 2083, relating to the assumption of risk. As there was evidence tending to support the claim that plaintiff assumed the risk, failure to instruct the jury in relation thereto, and that automatic couplers are not required to be attached to engines was prejudicial error.

**Same:** NEW APPLIANCES: EVIDENCE OF. Failure to equip engines
2 with the latest coupling devices is not *per se* negligence, but where such appliances are shown to be practical and safe their general use may be taken into consideration by the jury in determining the question of negligence in using older and different appliances.

*Appeal from Cedar Rapids Superior Court.*—Hon. J. H. Rothrock, Judge.

Thursday, January 29, 1903.

Action to recover for a personal injury. Judgment for the plaintiff. The defendant appeals.—*Reversed.*

*S. K. Tracy* and *Carroll Wright* for appellant.

*Rickel, Crocker & Tourtellot* for appellee.

Sherwin, J.—The petition is in two counts, one declaring that the defendant was negligent as a matter of law, because it had not equipped its switch engine with automatic couplers, and the other averring that the coupler on the engine was old, antiquated and defective. The answer raised an issue as to both counts, and further alleged as to the second that the plaintiff had assumed the risk incident to the use of the antiquated and defective coupler. The trial court did not construe the automatic coupler statute, or instruct the jury in relation thereto, but submitted the case on the general question of negligence, and without any instructions on the question of the assumption of risk. It becomes necessary, therefore, to construe this statute for the purpose of determining whether the court erred in failing to so instruct. The statute in force at the time the plaintiff received the injury complained of—August 11, 1900—was first enacted by the 23d General Assembly (chapter 18), which was substantially reenacted in sections 2079, 2080, 2081, and 2082 of the Code, which read as follows:

"2079. No corporation, company or person operating any line of railroad within this state * * * shall put in use any new car or any old one that has been in the shop for general repairs to one or both of its drawbars, that is

not equipped with automatic couplers, so constructed as to enable any person to couple or uncouple them without going between them.

"2080.    After January 1, 1898, no corporation, company or person operating a railway line shall have upon any railroad in this state any car that is not equipped with such safety automatic coupler.

"2081.    No corporation, company, or person operating any line of railroad in this state shall use any locomotive engine upon any railroad or in any railroad yard in the state that is not equipped with a proper and efficient power brake, commonly called a 'driver brake.'

"2082.    No corporation, company or person operating a line of railroad in the state shall run any train of cars that shall not have therein a sufficient number of cars with some kind of efficient automatic or power brake to enable the engineer to control the train without requiring brakemen to go between the ends or on top of the cars to use the hand brake."

This statute must be construed in its entirety for the purpose of determining the legislative intent, and, when so construed in the light of the common knowledge and experience of the legislators and the public in general, and construing the words and phrases used according to the context and the generally approved and accepted usage of the language, we think the legislative intent is clear and unambiguous. A railroad engine and its tender are one and inseparable, and while both may properly be classed as "cars" in the construction of some statutes, it does not necessarily follow that they should be so classed in the construction of all statutes, regardless of the legislative intent. Thus, in *Railroad Co. v. O'Hara*, 150 Ill. 580 (37 N. E. Rep. 917), the court held that a railroad engine should be classed as a car in construing a city ordinance forbidding railroad companies running trains or cars

1. ENGINE coupler: assumption of risk: statutes construed: instructions.

through the city at a high rate of speed. This construction was manifestly correct, and any other would have done extreme violence to the intent and spirit of the ordinance. In *Mayor etc. of New York v. Third Ave. R. Co.*,117 N. Y. 404, 646 (22 N. E. Rep. 755,) the court had under consideration a franchise granted the defendant on condition that it pay an "annual license fee for each car now allowed by law." At that time license fees were required by an existing ordinance for "each accommodation coach" or "stage coach," and it was held that a street car came within the meaning of the old ordinance by the very terms of the franchise, because the company was thereby bound to pay the annual fee then required, not one which should be thereafter imposed. So, in the case of *Railway Co. v. Manson*, 31 Kan. 337 (2 Pac. Rep. 800), in construing a statute requiring "proper cattle guards," the court held that the term "cattle guard," as employed in the statute, meant one that would prevent "animals from going on the land adjoining the right of way," and that the statute was not complied with by digging a pit under the track.

Neither these nor the other cases along the same line cited by the appellee afford us any material assistance in construing our own statute, the very laudable purpose of which was to protect the employes of railroad companies from the extraordinary hazards incident to the handling of cars. Recurring again thereto, it is manifest that the words "cars," used in sections 2079, 2080, and 2082, were used alone advisedly, and for the purpose of distinguishing them from engines and their tenders, because section 2081 of this same act expressly provides for the equipment of all "engines" with a "proper and efficient power brake, commonly called a 'driver brake,' " and, if it had been the legislative intent to require engines to be equipped with automatic couplers in addition to the brake, it would have been so expressed in plain language.

At the time this statute was originally enacted, no action had been taken by congress requiring self couplers and air brakes on all cars used in interstate commerce, and it was a matter of common knowledge that freight cars with all kinds of couplers and draw heads were in use on all of the railroads in the United States, and that cars belonging to the many different roads were widely scattered. Engines must be used in handling these foreign cars, and the increased danger and inconvenience of making a coupling where the engine or tender was automatically equipped and the car to which it was to be coupled was not was undoubtedly in the minds of the legislators. That the distinction which we have pointed out was clearly made and intended is manifested further by the language of sections five and six of the original act. Section five required railroad companies to "include in their annual report to the state railroad commissioners the number of locomotive engines and cars used in this state and what number is ▸ equipped with automatic power brakes and what number of cars equipped with automatic safety couplers and the kind of brakes and couplers used." Section six (2083 of the Code) provided that a railroad company "operating a railroad in this state and using a locomotive engine, or running a train of cars, or using any freight, way or other car contrary to the provisions of the four preceding sections shall be guilty of a misdemeanor," the prohibited use of the engine clearly referring to the section requiring a power brake. The last section referred to provides that "any railway employe who may be injured by the running of such engine * * * contrary to the provisions of said sections shall not be considered as waiving his right to recover damages by continuing in the employ of the company"; hence, if the statute were construed as contended for by the appellee, the question of the assumption of risk would be eliminated from the case. But we cannot so construe it, and, as there was evidence tending

to support that claim of the appellant, there was prejudicial error in not instructing thereon, and in not directing the jury that the statute requiring cars to be provided with the automatic couplers did not apply to engines and their tenders. The instructions given did not, therefore, define the issues clearly, nor direct the jury what the material allegations thereof were.

It is not, in our judgment, negligence *per se* not to equip engines and tenders with the latest devices for coupling, but we think it may properly be shown that such 2. SAME: 'new devices are practical in the operation of the appliances: evidence of. road, and that they tend to promote the safety of employes, and that such evidence may be properly considered by the jury in determining the question of negligence in using some older or different appliance. 2 Thompson, Negligence, section 2258. But without this showing of practicability and additional safety it is not, as we view it, competent to show that such appliances are in general use by other roads, for, if an appliance is not practical and safe, the fact of its general use would not alone excuse the defendant. 2 Thompson, Negligence, sections, 2253, 2254. See, also, *Metzgar v. Railway Co.*, 76 Iowa, 387.

For the reasons given, the judgment is REVERSED.