THOMAS M. ASHCRAFT, Appellee, v. DAVENPORT LOCOMOTIVE WORKS, Appellant.

**Master and servant:** INJURY TO SERVANT: DEFECTIVE MACHINERY: EVIDENCE. In this action for injury to plaintiff while assisting in unloading steel plates from a car by the use of a clamp machine by which the sheets were raised and lowered from the car, the evidence is held insufficient to show that the clamp was defective, causing it to lose its hold upon one of the plates which fell and injured plaintiff.

**Same:** BURDEN OF PROOF: *Res ipsa loquitur.* A servant claiming that his injury was the result of defective machinery furnished by the master not only has the burden of showing the claimed defect therein for which the master was responsible, but must also show that this defect was the proximate cause of his injury; so that where there are several causes which may have operated to produce the injury, for one of which, only, the master was responsible, the doctrine of *res ipsa loquitur* does not apply, and if nothing more than the happening of the accident is shown in such a case the servant has failed to establish his cause of action.

**Same:** NEGLIGENCE OF CO-EMPLOYEES: INSTRUCTIONS. Where, as in this case, the uncontradicted evidence showed that defendant furnished clamps of different sizes for lifting plates of different sizes, and that when plates were thin so that the clamp was liable not to hold the same wedges were provided to be placed between the plates and the clamp jaws, instructions that if defendant did not use ordinary care in supplying and using the clamp in question it was liable, were erroneous, because making the defendant responsible for the manner in which the clamp was used by co-employees.

**Same:** NEGLIGENCE: DUTY TO WARN: EVIDENCE. Where there was evidence that plates of steel had slipped from the clamp and fallen while being so handled, of which defendant had knowledge and concerning which the plaintiff, an inexperienced workman, was not advised, it was the duty of the defendant to warn plaintiff of the possible danger; and under the evidence in this case the negligence of defendant in this respect was for the jury.

**Same:** FELLOW SERVANT: VICE-PRINCIPAL. Defendant's foreman, who was superintending the unloading of the plates in question by plaintiff and others, was plaintiff's fellow servant in the matter of performing the work and selecting the tools used, but he was a vice-principal for the purpose of warning plaintiff of dangers incident to the work.

**Negligence:** INSTRUCTIONS. It is the duty of the court in submitting questions of negligence to confine the jury to a consideration of the grounds of negligence charged, rather than permit them to find for plaintiff if any negligence on the part of defendant was shown.

**Same:** KNOWLEDGE OF DANGER: DUTY TO WARN: EVIDENCE. Although the clamp used in the instant case for unloading the sheets of steel was a proper device to use for that purpose, still, if sheets of steel were liable to fall endangering the workman, of which plaintiff was not aware, it was the duty of defendant to warn him of such danger; and evidence that plates had previously fallen

while being handled with clamps of the type used at the time in question was admissible, on the questions of defendant's knowledge of the danger and its duty to warn plaintiff.

*Appeal from Scott District Court.*—HON. JAMES W. BOLLINGER, Judge.

THURSDAY, JUNE 16, 1910.

ACTION at law to recover damages for injuries received by plaintiff due to a fall upon him of a heavy piece of boiler plate which was being handled by defendant's employees with the use of a crane. Defendant denied liability, pleaded that the negligence, if any, was that of a fellow servant, and also assumption of risk. The case was tried to a jury, resulting in a verdict for plaintiff in the sum of $15,000. The trial court overruled defendant's motion for a new trial on condition that plaintiff accept judgment for $7,500, which he did, and judgment was rendered for the latter amount. Defendant appeals. *Reversed* and *remanded.*

*Ely & Bush* and *Cook & Balluff,* for appellant.

*Lane & Waterman* and *M. V. Gannon,* for appellee.

DEEMER, C. J.—Plaintiff was employed by defendant as a boiler maker's helper, and on the day of the acident was directed by the foreman to assist in unloading from a railway car some steel plates or sheets. Plaintiff had never been engaged in this work before, and testified that he did not know the perils thereof. The sheets or plates were about ninety-six inches wide, one hundred and twenty inches long, and varied in thickness from one-fourth to one-half inch, some of the testimony tending to show that there were a few three-sixteenths of an inch in thickness. They each weighed approximately one thousand

pounds. The object was to unload them and pile them up on the ground some distance from the car. One Wiggers was known as defendant's outside foreman, and he had charge of the unloading in which plaintiff was engaged. Wiggers directed plaintiff, who was on the ground, to keep the sheets of steel away from the railway car; and was engaged in the performance of this duty, being between the steel plate and the car when the plate fell over and upon him, causing the injuries of which he complains. The heavy part of the work was done with a movable crane, chains, and clamp or clamps. These clamps were of the so-called "never slip" variety, and it is not contended that such a clamp, if in proper repair, was not a proper tool or appliance for doing the work. As this clamp is difficult of description, we here set forth a drawing thereof in order that the case may be better understood.

Defendant's sketch showing improper application of clamp to plate, in which full pressure of clamp cannot be exerted upon plate.
A. Point of maximum pressure.
B. Center of clamping end of eccentric.
C. Pivot on which eccentric turns.
D. Ring into which suspension chain hooks.

As will be observed, this clamp has a jaw and an eccentric working on a pivot. This eccentric is so constructed that, when a steel plate is inserted far enough into the jaw and a chain attached to the farther end of the eccentric and raised, the sheet of steel is clamped between the eccentric and the jaw and firmly grasped; the grip becoming more secure as the chain attached at point "D" is drawn. The defendant had in its shop different sized clamps for handling the different sizes of plates, and, when any particular sheet did not seem to be tightly enough clamped, the men were accustomed to put in blank sheets as a sort of wedge. On the day in question Wiggers was on the car, and it was his duty to select proper clamps, to see that they were properly adjusted and attached to the plates, and, if necessary, to see that wedging was done. After this, he gave a signal, and the plate was swung up and clear of the car, and carried over to the pile which was being made upon the ground.

Plaintiff was directed to keep the plate as it was being unloaded away from the car and to keep it from going underneath. A clamp had been adjusted to one of the sheets. It had been raised clear of the car and taken to one side thereof, and was being lowered to the pile, when plaintiff went between it and the car, and was pushing it away therefrom when the plate slipped from the clamp, fell to the ground, and over and upon plaintiff, producing severe and permanent injuries. While many grounds of negligence were charged, there were but two submitted by the trial court, and these were (1) that the clamp which was being used was defective and out of repair and insufficient to hold the plate in its grasp; and (2) defendant's failure to warn plaintiff of the danger of the plates slipping from the clamp and falling. One of these proceeds upon the theory that the clamp was defective, and the other that, although in good condition

and a proper appliance there was still danger of the plates falling, and of this danger plaintiff was not warned.

There is no competent testimony that a clamp of the kind which was being used was not a proper tool or appliance for doing the work, but it is, and was, insisted

1. MASTER AND SERVANT: injury to servant: defective machinery: evidence.

that this particular clamp was defective and out of repair because it had too much play around the pivot. The testimony on this point is that the play on this particular clamp was from one-sixteenth to one-eighth · of an inch, and that the jaws of the clamp lacked one-eighth of an inch in meeting, but there is no testimony that it was worn at this point, and the evidence shows that the play around the pivot was not unusual. Indeed, we think the testimony fails to show any defect in the clamp itself. It is true that in this particular case it did not hold the sheet, but this may have been due to many causes. First, the clamp may not have been of proper size for handling the sheet which was being unloaded. Second, the plate may not have been inserted far enough into the jaw. Third, the employees may have been negligent in not inserting blanks or wedges. Fourth, the slipping may have been due to the presence of some foreign material, to the consistency of the jaws, or of the sheet of steel which was being removed.

Plaintiff's counsel insist that, as the sheet fell, this in itself, in view of the circumstances, was evidence of the defective character of the clamp. The doctrine of

2. SAME: burden of proof: res ipsa loquitur.

res ipsa loquitur does not ordinarily apply to actions by servants against their masters, although it may in some cases as in Huggard v. Glucose Co., 132 Iowa, 724. But where so many causes may have operated for one of which defendant, the master, may be responsible, and for others not liable, the maxim res ipsa does not apply. And in such a case, if nothing more than the happening of the accident

be shown, plaintiff has not made out his case.  Moreover, if the circumstances surrounding the case do no more than indicate a possibility of the accident happening because of a defective appliance, or if they are no more consistent with the theory that the accident was due to some defect but equally explainable on some other theory than the one charged, then plaintiff has not made out his case.  The reason for this is that the burden is upon the plaintiff, not only to show some defect for which the master was responsible, but also to show that this defect was the proximate cause of the injury.  These principles are well established by authority.  See, as sustaining them, *Kuhns v. Railroad,* 70 Iowa, 561; *Croft v. Railroad,* 134 Iowa, 411; *Siegel v. Railroad,* (Mich.) 125 N. W. 6; *Byrce v. Railroad,* 119 Iowa, 274; *Neal v. Railroad,* 129 Iowa, 5; *Haden v. Railroad,* 99 Iowa, 735; *Tibbitts v. Bryce v. Railroad,* 119 Iowa, 274; *Neal v. Railroad,* 129 Iowa, 636; *Rush v. Murphy Co.,* 135 Iowa, 376; *O'Connor v. Railroad,* 83 Iowa, 105.  Also, 2 Labatt on Master & Servant, section 837; *Donaldson v. Railroad,* 188· Mass. 484; *Voight v. Car Co.,* 112 Mich. 504 (70 N. W. 1103); *Dobbins v. Brown,* 119 N. Y. 188 (23 N. E. 537); *Schultz v. Railroad,* 116 Wis. 31 (92 N. W. 377); *Patton v. Tex. R. R.,* 179 U. S. 658 (21 Sup. Ct. 275, 45 L. Ed. 361).  Now, it is apparent from the testimony adduced that the accident may have happened from many causes aside from the use of a defective clamp, and, remembering that there was absolutely no direct evidence that the clamp was defective, it necesarily follows that the trial court was in error in submitting the issue of defective clamp to the jury.

II.  In instructions nine and ten the jury was told that, if defendant did not use ordinary care in supplying and using the clamp in question for the purpose of lifting the plate, then it was liable.  In view of the uncontradicted testimony that there were a sufficient

number of clamps of different sizes supplied by defend-
ant for lifting the plates, and that when
plates were thin the men wedged the sheets
in with blanks, these instructions made the
defendant liable for the manner in which the clamps
were used by plaintiff's co-employees and to this extent
the instructions were erroneous.   The same complaint is
made of instruction eleven and we think it is vulnerable
to the charge that it made defendant liable for the negli-
gence of plaintiff's co-employees in selecting the wrong
clamp.

*3. SAME: negligence of coemployees: instructions.*

III.   The testimony was sufficient to justify the sub-
mission of the second ground of negligence, to wit, de-
fendant's failure to warn plaintiff of the dangers incident
to the use of the clamps.   There was con-
siderable testimony to the effect that plates
or sheets had fallen while being handled
with these never slip clamps.   If this plaintiff had no
knowledge and was not warned thereof before undertaking
the work, there was a duty on the part of the master
to warn under the facts disclosed by this record.   Plaintiff
was inexperienced, and should not be held to the duty
of knowing such dangers.   Defendant did not warn him
thereof, or at least there is a conflict in the testimony
with reference thereto, and the case on this issue was
properly submitted.   Some of the instructions bearing
thereon are not as clear perhaps as they might have been
in failing to distinguish between the dangers incident to
the use of the particular clamp and to dangers incident
to the use of such clamps in general.

*4. SAME: negligence: duty to warn: evidence.*

Wiggers was plaintiff's fellow servant in doing the
actual work of unloading the car and in selecting and using
the clamp; and was defendant's vice prin-
cipal for the purpose of giving warning to
the plaintiff of the dangers incident to the
doing of the work in a proper and careful manner,

*5. SAME: fellow servant: vice-principal.*

For the performance or nonperformance of the latter duty defendant was responsible; but for the negligent performance or nonperformance of the former duties defendant was not responsible.

Instruction No. 22, given by the trial court, allowed the jury to find for plaintiff if any negligence on the part of the defendant was shown without confining this negligence to the charge made in the petition. In this respect it was erroneous. *Canfield v. Railroad,* 142 Iowa, 658; *Ramsey v. Railroad,* 135 Iowa, 329; *Edwards v. City,* 138 Iowa, 421. We should not reverse for this ground alone, but call attention to the error that it may not be repeated upon a retrial.

6. NEGLIGENCE: instructions.

IV. Testimony was adduced tending to show that plates had previously fallen while being handled with clamps of the type used on the day in question. This was objected to by defendant, but the objections were overruled. There was no error here. This testimony was clearly admissible to show defendant's knowledge of the danger in the use of these clamps, and its duty to warn plaintiff of these dangers. The testimony shows that these were proper clamps to use, but, if in their use there was danger of the plates falling, it was defendant's duty to warn plaintiff of this danger, unless he knew thereof. There is testimony that he had no such knowledge and the evidence was clearly admissible. Appellant's counsel misapprehend the object of this kind of testimony and the cases cited by them are not applicable. As sustaining our conclusions on this branch of the case, see *Klaffke v. Axel Co.,* 125 Iowa, 225; *Byard v. Palace C. Co.,* 85 Minn. 363 (88 N. W. 998); *Cushman v. Fuel Co.,* 116 Iowa, 618 (88 N. W. 817); *Myers v. Iron Co.,* 150 Mass. 125 (22 N. E. 631, 15 Am. St. Rep. 176). For the errors pointed out, the judgment of the dis-

7. SAME: knowledge of danger: duty to warn: evidence.

trict court must be, and it is, reversed, and the cause remanded for a new trial.

*Reversed* and *remanded.*