## FEDERAL MINING & SMELTING CO. v. ANDERSON.

### (Circuit Court of Appeals, Ninth Circuit. January 7, 1918.)

### No. 3002.

1. MASTER AND SERVANT ⬤⟿222(1)—INJURIES TO SERVANT—FELLOW SERVANTS —NEGLIGENCE.

The rules of a mining company declared that each man should ascertain by careful examination that the particular place in which he was employed was safe, and that, if unsafe, measures should be taken to remove such danger at once before proceeding with the work, and, if necessary, the foreman or the shift boss should be notified. A miner, who operated a drill, on beginning his work attempted to test the rock above his place of work with his drilling machine; there being no bar to pry down the loose rock. The shift boss, who had charge of the operations on that level, assured the miner that the place was all right, and directed him to commence work. After about ten minutes work loose rock fell, injuring him. *Held* that, as the very rule of the mining company gave the shift boss or foreman the ultimate authority to determine the safety of the working place, he was to that extent vice principal of the mining company, and his negligence was that of the mining company, even though he was a fellow servant of the miners, and hence the miner did not assume the risk of injury from fall of rock, being entitled to rely on the statement of the shift boss.

2. MASTER AND SERVANT ⬤⟿222(1)—INJURIES TO SERVANT—ASSURANCE OF VICE PRINCIPAL.

In such case the order and assurance of the shift boss, who was given control of operations on that level, were within the authority implied in the rule of the mining company.

In Error to the District Court of the United States for the Northern Division of the District of Idaho; Frank S. Dietrich, Judge.

Action by Louis Anderson against the Federal Mining & Smelting Company. There was a judgment for plaintiff, and defendant brings error. Affirmed.

Featherstone & Fox, of Wallace, Idaho, for plaintiff in error.

John P. Gray and McFarland & McFarland, all of Cœur d'Alene, Idaho, for defendant in error.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge. The plaintiff in the court below was an experienced miner, who for a year had been operating a compressed air drill in the defendant's mine. He was drilling into the face of the rock in a stope in which he had been working two or three months, when loose rock fell from above his head and injured him. He testified that, before beginning to work on the day of the accident, he looked for a bar to bar down the loose rock, but that he could not find a bar; that he attempted to test the rock with his machine drill, and that while doing so the shift boss came and asked him if he was not doing anything there, to which he replied that he was barring down the loose rock and could not find a bar; that the shift boss then said, "Never mind that; that is all right," and told him to start to work and get

the holes drilled, adding that he had found that the place was all right. The plaintiff testified that he obeyed the shift boss, and after drilling not more than ten minutes the rock fell. The plaintiff recovered a judgment in the court below.

[1] The defendant assigns error to the denial of its requested instruction for a directed verdict in its favor, and it contends that the evidence showed no negligence on its part, but showed that the plaintiff's injuries were the result of his own negligence and carelessness, and the obvious risk of his employment, which risk was assumed by him. The plaintiff's testimony, the purport of which is above set forth, is sufficient to establish the defendant's negligence, if, as was held by the court below, the assurance of the shift boss that the place in which the plaintiff was working had been found safe is to be deemed the assurance of the defendant itself. The defendant contends that the shift boss was but the fellow servant of the plaintiff. The shift boss had charge of the mining operations upon the sixteenth and eighteenth levels of the mine, comprising 22 floors, and had supervision of the work of from 35 to 40 men. He did no manual labor, but his entire time was given to directing and superintending the work of others, and ordinarily he was able to visit each place where the work was going on at least twice during each shift. He had the authority to direct the plaintiff to go to work upon the wall, and he informed the plaintiff, in substance, that he had inspected the rock, and that the place was safe. There is no evidence that he had not the authority to make the inspection and give the assurance of safety.

The defendant relies upon a rule of the mine which it says imposed upon the plaintiff and all workmen in the mine the duty of careful examination of the particular place in which they were employed, to see that it was safe, and that by that rule authority to make such inspection was taken from the shift boss. The rule provides:

"Each man must ascertain by careful examination thereof that the particular place in which he is employed is safe. If found to be in an unsafe condition from any cause whatever, measures must be taken to remove such danger at once, and before proceeding to work, and, if necessary, the foreman or shift boss must be notified."

That rule by express terms vested the shift boss with general supervisory authority in the matter of making the working place safe, and the evidence shows that the plaintiff complied with the rule. He at first, as the rule required him, attempted to make his working place safe. At that point the shift boss intervened, and told him that examination had been made, and that the place was safe, and he peremptorily ordered the plaintiff to proceed to work. In so doing, the shift boss exercised authority which is found in the language of the rule, and, although the evidence leaves it doubtful whether the shift boss was a fellow servant with the plaintiff, the question whether or not he was such fellow servant is not necessarily involved here, for by the language of the rule the defendant gave the shift boss the ultimate authority to determine the question of the safety of the working place, and made him its vice principal for that purpose, and that authority the shift boss exercised by telling the plaintiff that the place had been

inspected and was safe. Thereby he relieved the plaintiff of the duty of making further inspection.

A foreman may be a fellow servant when engaged in accomplishing the common object of the laborers; but he is a vice principal when performing, or aiding to perform the duties which by law devolve upon the master. If the act which he performs is one which pertains to the duty which the master owes to the servant, the master is responsible for its performance, irrespective of the rank of the servant to whom it is intrusted. Alaska Pacific S. S. Co. v. Egan, 202 Fed. 867, 121 C. C. A. 225; Bunker Hill & Sullivan Min. & C. Co. v. Jones, 130 Fed. 813, 65 C. C. A. 363; Mast v. Kern, 34 Or. 247, 54 Pac. 950, 75 Am. St. Rep. 580; Crispin v. Babbitt, 81 N. Y. 516, 37 Am. Rep. 521; Perras v. Booth & Co., 82 Minn. 191, 84 N. W. 739, 85 N. W. 179; Knutter v. N. Y. & N. J. Telephone Co., 67 N. J. Law, 646, 52 Atl. 565, 58 L. R. A. 808; Ashcraft v. Locomotive Works, 148 Iowa, 420, 126 N. W. 1111. In Northern Pacific Railroad Co. v. Peterson, 162 U. S. 346, 353, 16 Sup. Ct. 843, 845 (40 L. Ed. 994) the court, after referring to the duty of the master to provide the servant with a reasonably safe place to work, and safe tools and appliances, said:

"If, instead of personally performing these obligations, the master engages another to do them for him, he is liable for the neglect of that other, which, in such case, is not the neglect of a fellow servant, no matter what his position as to other matters, but is the neglect of the master to do those things which it is the duty of the master to perform as such."

[2] We find no merit in the contention that the order and assurance of the shift boss were made in contravention of the defendant's rule. On the contrary, we think it is clear that the action of the shift boss was within the authority contemplated by the defendant when it promulgated the rule.

The judgment is affirmed.