BLANCHARD v. DETROIT & MACKINAC RAILWAY CO.[1]

MASTER AND SERVANT—RAILROADS—INJURY TO BRAKEMAN—AU-
TOMATIC COUPLERS—STATUTES—CONSTRUCTION.

Section 5511, 2 Comp. Laws, requiring coupler devices that can
be operated without requiring the operator to go between
the cars to be placed "upon each end of every freight car,"
etc., and declaring (section 5512) that every railroad com-
pany refusing to comply therewith shall be liable to a penalty,
does not require the placing of such couplers on the tenders
of locomotives.

Error to Alpena; Emerick, J. Submitted February
17, 1905. (Docket No. 185.) Decided April 21, 1905.

Case by Louis Blanchard against the Detroit & Mack-
inac Railway Company for personal injuries. There was
judgment for defendant on a verdict directed by the court,
and plaintiff brings error. Affirmed.

*Collins & D'Aigle*, for appellant.

*Charles R. Henry*, for appellee.

OSTRANDER, J. Plaintiff was a brakeman, employed
by defendant from 1897 to late in the winter of 1899,
and again from February 15, 1900, to March 3d of the
same year, when he was injured. On April 10, 1900, he
again resumed work, and continued, at practically the
same work as before, until March, 1902. When the injury
occurred the locomotive was backing to make connection
with a train of flat cars loaded with short logs. Plaintiff
rode on the engine until it was within a few feet of the
train. He then ran ahead of the backing locomotive, and
in making the coupling his hand was injured. The negli-
gence of defendant charged and relied upon is failure to

[1] Rehearing denied June 29, 1905.

comply with the provisions of section 5511, 2 Comp. Laws.
That section and the one succeeding it read as follows:

"(5511) SECTION 1. *The People of the State of Michigan enact,* That on and after the first day of July, one thousand eight hundred and eighty-six, every railroad company owning or operating any portion of a railroad wholly or partly in this State shall cause to be placed upon each end of every freight car thereafter constructed, purchased, or leased, for use in this State, by such corporation, or which may be sent to the shops for general repair or for repair of the coupling fixtures thereof, some form of safety coupler or safety coupling device, by which the cars can be coupled and uncoupled from either side of the train without the necessity of going between the cars, and which will couple with other forms of safety coupler, and with the ordinary link and pin coupler: *Provided,* That no coupler or device for coupling of cars shall be adopted for use by any railroad company owning or operating any railroad wholly or partly within this State until approved by the commissioner of railroads: *Provided further,* That no freight car shall be run upon any of the railroads within this State after the first day of January, eighteen hundred and ninety-one, unless furnished with safety couplers as provided by this act.

"(5512) SEC. 2. The provisions of this act may be enforced by any circuit court of this State in a county through which the railroad of any company refusing to comply with such provisions may run, upon application of the commissioner of railroads, under such penalty as the said court may determine, of not less than one hundred dollars for each violation of the provisions of this act."

It is conceded that the flat car to which the coupling was made was equipped as the statute requires. The tender of the locomotive had a link and pin coupling. Plaintiff was perfectly acquainted with the equipment, and had at different times made the coupling, as he attempted to do at the time of his injury, by guiding, with his hand, the link into the opening or slot of the automatic coupler.

Plaintiff testified, "I do not know of any mismanagement on the part of the engineer, or any one else, that caused me to receive my injury."

At the conclusion of plaintiff's case, the court, on the motion of defendant's attorney, directed a verdict for defendant, upon the ground that to plaintiff the risk was visible, and was well known, and that he assumed that risk. In doing this the learned trial judge expressly declined to rule upon other propositions urged by counsel for defendant, which were that the statute does not require automatic couplers upon the tenders of locomotives, nor upon any but freight cars; that the statute relied upon is penal, and failure to obey it not ground for private action, since a right of private action is not expressly given. For this reason the fifth, sixth, and seventh assignments of error seem not well taken. There remain the assignments based upon the refusal to submit the case to the jury and the one that the " court erred in holding that plaintiff had assumed the risk of his employment, notwithstanding the provisions of section 5511 of the Compiled Laws of 1897."

The only negligence relied upon is the failure or neglect of defendant to equip cars as the statute requires. If, therefore, the statute is held to apply to freight cars only, the direction of a verdict for defendant was right, and the judgment should not be disturbed. The statute names freight cars only. It omits to name locomotives, tenders (which are in fact a necessary part of locomotives), passenger cars, or any other of the classes of cars usually designated by the use to which they are put. The fact that the statute is penal is noticed for the purpose only of saying that this fact is a reason for not enlarging the statute by construction, even if the meaning of the terms used in it were more doubtful than they are. We may concede that there is one, at least, general object or purpose of the legislation in question, and that the greater safety of employés. This does not excuse reading into the statute words which, while they might better effectuate the general purpose, are plainly excluded by the words found in the statute.

Counsel upon both sides have called attention to the Federal statute and to the case of *Johnson* v. *Southern Pa-*

*cific Co.*, 196 U. S. 1. The Federal statute makes it unlawful for any common carrier to haul or permit to be hauled or used upon its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars. The last section of the act gives a right of action to any employé of such common carrier who may be injured by any locomotive, car, or train in use contrary to the provisions of the act, and that such employé should not be deemed to have assumed the risk thereby occasioned, although continuing in the employment of the carrier after such unlawful use of locomotive, car, or train had been brought to his knowledge. The suit was brought by an injured employé, and it was held, overruling the decision of the circuit court and of the circuit court of appeals, that the word "car" was used in its generic sense, and that, tested by context, subject-matter, and object, "any car" meant all kinds of cars running on the rails, including locomotives.

We have not lost sight of the contention of counsel for appellant that the words of description found in our statute, namely, "by which the cars can be coupled and uncoupled from either side of the train, without the necessity of going between the cars," read in the light of the fact that locomotives are coupled to freight cars, and that unless locomotives are so equipped they can be neither coupled nor uncoupled without going between the cars, requires that his construction of the act be adopted. The words quoted describe an appliance. The statute requires that this appliance be placed at each end of every freight car. When that is done, the law is obeyed. See *Bryce v. Railway Co.*, 119 Iowa, 274.

The judgment is affirmed, with costs.

CARPENTER, BLAIR, MONTGOMERY, and HOOKER, JJ., concurred.