THOMAS RYAN, Appellee, v. FARLEY & LOETSCHER MANU-
FACTURING COMPANY, Appellant.

**Master and servant:** NEGLIGENCE: BURDEN OF PROOF: INSTRUCTION.
1 While the negligence of an employer may be established by showing his failure to supply proper tools and appliances, or to provide reasonably sufficient help to accomplish the work, still the burden is upon the servant injured thereby to establish his negligence in either respect, and an instruction which requires the employer to affirmatively disprove his negligence is erroneous.

**Negligence of fellow servant:** CONCURRENT NEGLIGENCE OF MASTER:
2 EVIDENCE. Where the injury to a servant is the result of the negligence of a fellow servant, there can be no recovery against the employer, unless he was also negligent and his negligence combined with that of the fellow servant to produce the injury. In the instant case the evidence relating to the moving of a derrick is held to show that plaintiff's injury was not the result of the employers failure to furnish suitable appliances or reasonably sufficient help, but rather to the inefficient handling of the guy wires by plaintiff's fellow workmen.

*Appeal from Dubuque District Court.*—HON. M. C.
MATTHEWS. Judge.

TUESDAY, JANUARY 12, 1909.

ACTION at law to recover damages on account of personal injury. Verdict and judgment for plaintiff, and the defendant appeals.—*Reversed.*

*Hurd, Linehan & Kiesel,* for appellant.

*Matthews & Frantzen* and *N. E. Utt,* for appellee.

WEAVER, J.—The appellant was engaged in the construction of a large factory building in the city of Dubuque, and the appellee was one of its employees in the prosecution of the work. The framework of the building had been carried to the third story, and an opening or space for an elevator well had been left, extending from the basement up through the several floors. Resting upon the joist at the margin of this hole on the third floor had been erected a derrick used in hoisting building material from below. This derrick was somewhere from fifteen to eighteen feet in height, constructed of two upright sticks set about three and one-half feet apart, in a horizontal shoe or sill at the bottom, and sloped together at the top, where a pulley block was attached. When situated where it could be so operated, a second removable part of two uprights and sill framed substantially as already described and called in workmen's parlance a "stiff leg" was made use of, the complete frame forming a sort of pyramid, the several upright timbers of which served each as a brace against the others, and, as thus operated, it ordinarily required no guy lines to stay or support it. When, however, it was desired to use it over an opening or hole too wide to be spanned in this manner, the stiff leg was removed, and the remainder of the frame work held in position by guy lines. When so erected, it constituted what is known to builders as a "shear derrick,"

and appears to be a common device in carrying on such
work. Its weight is variously estimated at from three
hundred to four hundred pounds. The elevator hole in
this building was some six or seven feet in width and the
derrick was rigged as a shear, standing on the east side
of the opening and leaning over it, so that the block at the
top would hang over the center of the well. To sustain
the framework in this position, two guy ropes were stretched
from the top of the derrick, one to the southeast and the
other to the northeast, while a third was stretched directly
west to steady the frame and prevent its being thrown or
or drawn backward to the east. After being thus used for
some time, it became necessary in the progress of the work
to move the derrick north to another position on the same
floor. The plaintiff, with four other employees, one of
whom, J. C. Strain, appears to have had immediate direc-
tion of the work, undertook the removal. The joists of
this floor were still uncovered, except by scattering boards
and pieces of timber, and the derrick had to be dragged
or pushed across the joists to its new position. One of the
men, Whalen, was stationed at the west guy rope. Strain
took the one at the northeast, and a third man, Parks,
the one at the southeast, while plaintiff and the fifth man,
Beacon, pulled and pushed the derrick northward. The
men at the lines unfastened them, but each kept a turn or
half hitch about a joist or other convenient timber, pay-
ing out or taking up slack as was required for the move-
ment of the derrick. To facilitate the movement, the
frame was permitted to take a more nearly perpendicular
position than it occupied when in use. When the move-
ment had progressed a distance variously estimated at from
fifteen to twenty-five feet, the shoe or sill struck some ob-
struction, and, the two men working at that point appear-
ing to have difficulty in overcoming it, Whalen dropped his
hold upon the west line, and went to their assistance.
While so engaged, Strain, and perhaps Parks also, called

out a warning, and Whalen was hurrying back to his rope, when the derrick toppled, and fell to the eastward, and plaintiff, who was pushing or trying to hold one of the legs, was thrown into the elevator well, receiving serious injuries. The petition charges the defendant with negligence in five separate respects: First, failing to furnish the plaintiff with a safe place to work; second, failing to furnish plaintiff and his co-employees proper appliances for the work they were to do; third, failing to properly secure or fasten the derrick at the bottom; fourth, failing to supply a sufficient number of guy ropes for the support of the derrick; and, fifth, failing to furnish a reasonably sufficient number of men for the performance of the required work. Of these specifications the court withdrew the first three from the consideration of the jury. Upon interrogatories submitted to it by the court, the jury found specially that the defendant was negligent in furnishing an insufficient number of guy ropes as well as an insufficient number of men for the performance of the work, and that the dropping of the west guy line by Whalen had nothing to do with the falling of the derrick. There was also a general verdict for plaintiff for damages.

Though assigning other alleged errors, counsel for appellant in effect say that they stake their case upon the insufficiency of the evidence to sustain the verdict and upon certain paragraphs of the court's charge to the jury to which exceptions have been preserved. The matter of error in the instructions is simply pointed out, but not argued, and we would not stop to discuss it but for the fact that a reversal appears to be necessary upon other grounds, and we think it well to suggest our views upon the points made to avoid misapprehension with reference thereto in the event of another trial. The eleventh paragraph of the court's charge to the jury is as follows: "(11) You are instructed that an employer is not liable for injuries re-

1. MASTER AND SERVANT: negligence: burden of proof: instruction.

sulting from the improper use of safe appliances furnished to the servants, and, if you believe from the evidence that plaintiff while in the performance of his duties in connection with the moving of the derrick in question received the injuries complained of in his petition because of the manner of the use of the west guy line of the derrick by the servant, Edward Whalen, in failing to snub or secure said west guy line, *and you further find that three guy lines were sufficient to make the moving of said derrick reasonably safe, and you find that five men were sufficient number to make the moving of said derrick reasonably safe, then and under such circumstances your verdict should be in favor of the defendant."* The thought which is expressed in the lines which we have italicized is repeated in various forms in several paragraphs of the charge, and we think it open to the objection which the appellant makes thereto. Its effect is to make the right of the defendant to a verdict rest upon its ability to affirmatively establish the sufficiency of the guy lines and number of men, thus changing the burden of proof from the plaintiff to the defendant. It is true that negligence may often be predicated upon the failure of an employer to furnish a sufficient supply of proper tools and appliances or failure to provide a reasonably sufficient number of men for the work which is to be done, but the burden is upon the servant to establish the negligent omission, and not upon the employer to negative it.

II. A careful reading of the entire record forces us to the conclusion that, under the issues as joined and submitted to the jury, the evidence does not sustain the verdict. Let it be borne in mind at the outset that the question whether the appellant was chargeable with negligence respecting the plan adopted for doing this work is not raised by the pleadings, and, if brought into the case at all, it is only in the arguments of counsel upon appeal. By order of the trial court, the allegations of negligence were

limited to the alleged insufficiency of the number of guy lines and of the number of men employed in the work, and to these allegations, together with the usual inquiries as to assumption of risk, contributory negligence, and negligence of fellow servants, we must confine our attention. If the question as to the reasonable sufficiency of the number of men employed were the single uncomplicated issue, it might not be easy to state a good ground for disturbing the jury's finding thereon because the appellant's expert witnesses or some of them upon this feature of the case appear to agree with those of the appellee that when working upon uncovered joists, and with one man at each guy rope, there should be more than two men to do the work of moving the derick. But the question, as here presented by the record, is so interwoven with other findings which we think have no support that we can not regard it as of controlling effect. That Whalen was a fellow servant is not questioned.

It follows, of course, that, if appellee's injury is chargeable to Whalen's negligence, there can be no recovery unless it further appears that the employer was also

2. NEGLIGENCE OF FELLOW SERVANT: concurrent negligence of master: evidence.

negligent, and that its negligence combined with that of Whalen to produce the injury. The jury do not so find, but declare that Whalen's act had nothing to do with the falling of the derick, a finding which is opposed to the testimony of every witness upon both sides who was present at the accident and has anything to say upon this phase of the case upon the witness stand. Indeed, the admitted situation would seem to carry with it an unmistakable demonstration that, with the west guy line held in place, it would be impossible for the derick to fall eastward, except by the sliding or movement of the bottom of the derick westward, and of this there is no suggestion in the record. In its position before the attempt to move it northward was made, the derick stood at the east side of

the elevator well with its top leaning at least three and one-half feet to the west to bring the pulley block over the center of the opening. In that position, it was, as we have shown, upheld and kept from falling westward by the two guy lines extending northeast and southeast, while the west line served to prevent its falling or being drawn to the eastward. The brace or rather the pull of these three spreading lines each against the others would, in fact, prevent the derrick from falling in any direction. When, for the purpose of moving the derrick, the three men took their several places at the guy lines, untying them, but retaining their holds by a half hitch of each line around its anchoring joist, Whalen at the west and Parks at the southeast, paying out slack, and Strain at the northeast taking in slack, thus adjusting their lines to the position of the derrick as it was slowly moved northward, it is clear that, so long as these three men properly performed their duty, it was impossible for the derrick to fall until at least it had moved so far north that the guy lines being still held at the original point of their anchorage would all draw from one side, or so nearly so as to pull the frame work over. It is the contention of the appellee's counsel in argument that the latter suggestion is the true explanation of the accident, and that the dropping of the rope by Whalen was therefore not a factor in producing the plaintiff's injury. Unfortunately for this theory it seems to have been elaborated since the case was tried below, and, moreover, we think it is not fairly within the scope of either of the two specifications of negligence submitted to the jury. We may also add that, while some of the estimated measurements would give color to this theory in argument, it is out of harmony with the testimony of every eyewitness who speaks to that point concerning the actual position of the lines when the fall occurred. Indeed, even if we were to suppose that the mistake was made of moving the derrick too far north before

moving the anchorage of the guy lines in the same direction, it still seems plain that, had Whalen's line been held in place, the derrick in falling would have been pulled south or southwest, instead of to the east, with the probable avoidance of the injury to appellee. Thus, in any event, it appears to a moral certainty that the loosening of the west line did have something to do with the falling of the derrick, and the finding of the jury to the contrary upon this material proposition can not be sustained, and we think it must be held to vitiate the general verdict.

It follows that a new trial must be ordered; and the judgment of the district court is therefore *reversed*.