M. O. HOOK, Appellant, v. CHICAGO, GREAT WESTERN RAILROAD COMPANY, Appellee.

**MASTER AND SERVANT:** Negligence—Safe Place to Work—
1 **Servant Making Own Place.** The master cannot be said to be negligent when he furnishes suitable and sufficient materials and therefrom the servant himself makes, or through his fellow servant makes, his own place in which to work in his own manner and at such times and places as become necessary. In such case the negligence of the fellow servant will be imputed to plaintiff.

PRINCIPLE APPLIED: Several months before plaintiff was injured, cinders were placed in defendant's repair yards to act as a foundation on which to work. They were soft, loose, easily scraped aside, somewhat uneven, there being depressions from 5 to 6 inches, sloping toward the track on which the bad order car stood. They were firm enough to sustain the ladders used, and were some 6 inches higher than the rail. Plaintiff and his co-employee knew all this. Plaintiff was a car repairer and it was no part of his business to level off the surface of the cinders or ground. Defendant furnished three oak ladders, 8 ft. high, bolted at the top, and spread apart at bottom, on which 16-ft. plank, 2x12 in., were placed for scaffold. The men used their own judgment as to how and where to place the ladders. To set them up was one man's business as much as the other, each knowing that it was sometimes necessary to scrape aside the cinders and block up in order to make the ladders level. At time in question, the co-employee scraped the cinders down level and blocked up two legs with a few pieces of small inch boards, carefully placing the blocks so they would not slip or be disarranged when the ladders were placed thereon. Plaintiff did not notice what had been done about blocking but when he went upon it, it seemed secure. He started to work, the ladder tipped toward car and he was thrown off and injured. It was not claimed that it was impossible to place the ladders on the ground so they would be secure and firm, or that the surface offered

any serious impediment to so doing. Why ladder tipped is not shown. It was not claimed that anything more should have been furnished along with the ladders for added security.

*Held,* defendant was not shown to be negligent, the negligence, if any, being the negligence of the plaintiff's fellow servant, which would be imputed to plaintiff.

*Appeal from Dubuque District Court.*—HON. J. W. KINTZINGER, Judge.

TUESDAY, JANUARY 12, 1915.

THIS is an action brought by the appellant to recover of the defendant railway company for personal injuries sustained by him July 21, 1911, through the alleged negligence of the company. At the close of the evidence for plaintiff, the court sustained defendant's motion to direct a verdict in its favor and judgment was rendered against the plaintiff for costs. Plaintiff appeals.—*Affirmed.*

*Fitzpatrick & Frantzen,* for appellant.

*Carr, Carr & Evans* and *George T. Lyon,* for appellee.

PRESTON, J.—The petition alleges that defendant maintained at Oelwein, Iowa, repair yards ·in which cars were placed for the purpose of having repairs made thereon; that

1. MASTER AND SERVANT: negligence: safe place to work: servant making own place.

said yards were used exclusively as repair yards and were maintained for that purpose; that in a portion of said yards the defendant had negligently failed to level off the surface of the cinders therein, but kept the same in a, rough and uneven condition, unsuitable for the purpose for which said yards were used. The plaintiff was in the employ of the defendant as car repair man; that plaintiff had no duty to perform in relation to leveling the surface of the ground or cinders; that defendant provided appellant with scaffolding, consisting of ladders, and planks placed across the top of the same; that on the day plaintiff was injured he was ordered by the foreman to make repairs upon a car situated

in that part of the yards where the cinders were rough, sloping and uneven; that the workman who was working with plaintiff, when he came to place the ladders alongside the car to put the plank upon, was compelled to build up under the legs of the center ladder with pieces of boards which he found in the vicinity; that plaintiff thereafter went to work upon such scaffolding, and, by reason of the uneven and slanting condition of the ground, the blocking worked from under the legs of the ladder, permitting the scaffolding to fall toward the side of the car, throwing plaintiff to the ground, against a tool chest, fracturing the bones in his leg, causing a shortening thereof.

The answer of defendant denied all the allegations of the petition.

There is no dispute in the evidence, and the tendency of it is to show that defendant maintained its repair yards situated about half way between the shop yards and the roundhouse; the yards were used for repairing bad order cars. The track farthest west was known as the lead, and from this main track other tracks were connected. The track next to the lead was No. 3, then No. 2, then No. 1, then No. 13, being the farthest track east, used as a repair track. At the time of plaintiff's injury, the track was full of cars, set off two and two, with a space between of about six or eight feet. The distance between tracks 1 and 13 was about twelve feet. In the fall of 1910, the company hauled cinders into the repair yards for the purpose of making a foundation, or surface, for the men to work upon; after the cinders were brought in the company started to raise the tracks, spread out the cinders and leveled them off; there was a space of about four car lengths about the center of track No. 1, or between 1 and 13, which was more or less rough or uneven; at some places the depressions were five or six inches and sloped towards the tracks upon which the car was standing when plaintiff was injured; plaintiff had knowledge of the condition of the surface, as did his co-employee, Donovan; the cinders were soft and loose enough so that the

men, in placing the ladders, could easily scrape them out, and yet were hard enough to sustain the weight of the ladders. The cinders on the outside of the rail on Track 1, and in the space between Tracks 1 and 13, were about six inches higher than the rail. It was no part of plaintiff's business to level off the surface of the cinders or ground; his business was to repair cars, and for this purpose the company furnished plaintiff and Donovan and the other car repairers with ladders upon which plank were placed to make a scaffold along the side of the cars; the men used their own judgment as to where and how they would place the ladders. It was the man who did the work on the scaffolding who set it up. Plaintiff testifies:

"We had to determine for ourselves what was necessary for us to do to make the scaffolding stable and secure. When I came to work at the place where I was hurt I walked over the ground between 1 and 13. I had been over the ground and walked over the ground. I knew that the cinders were higher in center space than they were at the rails. I relied on Mr. Donovan to set the ladders. I knew the ground was rough and uneven, and knew it was necessary to do something to make the ladders set level. I supposed that Mr. Donovan had done whatever was necessary to level them."

When they finished work on one car the scaffolding and planking would be taken to the next car; at the time in question plaintiff took the tools and Donovan took down the ladders and put them up at the car that they were going to work on. After plaintiff carried down the tool chests they carried down the planks. When they got to the ladder, Donovan climbed up the ladder and laid his end of the plank on top, came back to plaintiff, climbed half way up the other ladder, and plaintiff handed him the plank and he laid it on top of the ladder. They then went back for the second plank, which was placed in the same way. There was no particular arrangement between plaintiff and Donovan to do that. It was no

more Donovan's business than the plaintiff's. There were no instructions from anyone that Donovan was to set the ladders or plaintiff gather the tools. It was left to the two men who were working together on scaffolding to set the ladders wherever they needed them to repair a car and to set them in such a way as they needed to have them. Two ladders were put together by being bolted at the top and standing apart at the bottom when in use, so as to stand up alongside the car without touching it. They were about eight and one-half feet in height; cleats were fastened on the sides of the ladder; the ladders were made of oak; the planks were two inches thick, twelve inches wide and sixteen feet long. At the place where plaintiff was working there were three ladders, one in the center and the other two near the ends of the car; the planks were lapped at the center ladder. In order that the bottom of the ladder should set up on a level, they sometimes scraped the ashes out, or would block up under one to make it level.

At the time the scaffolding in question was prepared by Donovan and plaintiff, Donovan says the ground was level where the south ladder was placed; he blocked the west leg of the center ladder with three or four pieces of $\frac{7}{8}$-inch boards, six or seven inches wide and six or eight inches long, and under the west leg of the north ladder, the blocking was about an inch and a half. Before placing the blocks, he scraped the cinders so they would lie on level ground, and set the leg of the ladder upon the blocks; after this was done he took hold of the ladder to settle it, and says it seemed secure; plaintiff also so testified. Donovan says he took pains to place the blocks in such a way that they would not be likely to slip, and that in settling the ladder he did not move the blocks; they were as near level as he could get them. The defendant furnished only the ladders and planking. For blocking, the men used pieces of the roof or anything they could get that they thought would answer the purpose.

Plaintiff was injured July 21, 1911. At this time there were four men in the crew of repairers, plaintiff and Donovan

on one side of the cars, and two other men on the other side. When plaintiff was hurt the car they were working on was on track No. 1. After the scaffold had been prepared by plaintiff and Donovan, plaintiff went upon the scaffold to work. He had just bored a hole in the side of the box car near the roof, when the scaffold tipped against the box car, throwing him off and injuring him. Plaintiff says that after he was thrown to the ground he noticed that the blocks were not then under the foot of the ladder, but he had not noticed the blocking before that, and he says that neither when he was assisting Donovan in placing the planks on the ladders, nor when he got upon the scaffold to make the repairs, did he look to see whether anything had been done to make the ladders stand level and firm, but when he went upon the scaffold it seemed secure.

There is no claim made that it was impossible to set the ladders upon the ground so they would stand secure. Defendant did not furnish the plaintiff with a place to work, but merely provided him with the appliances with which he and Donovan were to construct the scaffold and make his own place to work. If the scaffold as constructed was unsafe, it was so by reason of the failure of Donovan to properly set up the ladders, and, it being the duty of both to prepare the scaffold, the failure of Donovan to set them so they were safe and secure is imputed to the plaintiff. Cases are cited as to the duty of the employer to furnish a reasonably safe place to work, but we deem it unnecessary to refer to them, there being no dispute as to the law in this respect by the defendant.

Appellee cites *Lammey v. Coal Co.*, 144 Iowa 640, on the proposition that where plaintiff and a fellow employee are charged with the joint duty of making their working place safe, the negligence of one is to be imputed to the other; and *Galloway v. Turner*, 148 Iowa 93, *Peterson v. Railway*, 149 Iowa 496, on the point that the employer is not liable to an employee for damages arising on account of the act or failure of a fellow employee; and *Ryan v. Mfg. Co.*, 140 Iowa 619,

*Ailes v. Railway,* 135 Iowa 154, as holding that the employer
is not liable to an employee on account of the improper use by
a fellow employee of appliances furnished; and *Ashcroft v.
Locomotive Works,* 148 Iowa 420, to the point that the em-
ployer is not liable for the selection by a fellow employee of a
defective appliance. This is not a case in which the defendant
furnished to the plaintiff a scaffold standing upon rough and
uneven ground. The defendant did not construct the scaffold,
but simply furnished plaintiff materials with which he him-
self, together with his fellow workman, could construct a scaf-
fold at any time and at any place where it was necessary in
the discharge of his duty to use one. The scaffold was the
place in which the plaintiff was working. As stated, it is not
claimed that it was impossible to make the ladders stand
even and firm, even though the ground was uneven and slop-
ing, nor is it intimated that the character of the surface
of the ground presented any serious difficulty in making the
legs of the ladders stand firm. Because of the depressions, or
rises in the ground in the yards, it was necessary to either dig
into, or scrape the cinders away, or block up the legs of the
ladders. To do this was the work of but a few minutes and
was so simple that plaintiff, when he got upon the scaffold,
knowing the condition of the ground at this particular point
in the yards, made no examination of the manner in which
the ladders had been set up, but proceeded with his work upon
the assumption that Donovan had done whatever was neces-
sary to make the scaffold safe and secure. The evidence does
not show just what caused the ladder to tip and throw the
plaintiff to the ground. Possibly his work caused the scaf-
folding to shake; but, if the character of the surface of the
ground had anything to do with it, it must follow that the
accident to plaintiff was the result of the failure of Donovan
to do what he ought to have done to obtain a firm footing for
the ladder. If the condition of the ground as it existed was
such as to make the ladders insecure, it was the duty of Don-
ovan and plaintiff to guard against it, either by digging down

in the cinders, or by the use of blocks, and they did use the blocks. It is not claimed that on account of the unusual character of the surface of the ground it was necessary for defendant to furnish any additional appliances, and, as before stated, there is no claim that it was impossible under the conditions as they existed to so set the ladders that the scaffold would be firm and secure. The evidence simply shows that they were not properly set, in view of the conditions as the plaintiff and Donovan knew them to be.

Under the record, we are of opinion that there is no negligence chargeable to the defendant and for which it is liable. The negligence, if any, was that of the plaintiff's fellow employee. The judgment of the district court was right, and it is—*Affirmed.*

DEEMER, C. J., LADD, WEAVER and GAYNOR, JJ., concur.